543 A.2d 579

COMMONWEALTH of Pennsylvania, Appellee,

v.

D'Angelo JONES, Appellant.

COMMONWEALTH of Pennsylvania, Appellant,

v.

D'Angelo JONES, Appellee.

Superior Court of Pennsylvania.

Submitted March 17, 1988.

Filed June 15, 1988.

494

Thomas A. Dill, Sharon, for appellant (at 1413) and appellee (at 1499).

James P. Epstein, District Attorney, Mercer, for Com., appellee (at 1413).

Lorinda L. Hinch, Assistant District Attorney, Mercer, for Com., appellant (at 1499).

Before TAMILIA, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This case involves consolidated appeals. At 1413 Pittsburgh 1987 the defendant questions the order denying his motion to dismiss for alleged violations of his right to a speedy trial under Pa.R.Crim.P. 1100. At No. 1499 Pittsburgh 1987 the Commonwealth challenges the order granting the defendant a new trial, which is appealable under Pa.R.App.P. 311(a)(5). We affirm in both instances.

As for the facts attendant to No. 1413 Pittsburgh 1987, a review of the record indicates that the defendant was charged by criminal complaint on June 6, 1987, with Theft by Unlawful Taking and Criminal Conspiracy. This made the Rule 1100 rundate December 3, 1986. Because the defendant was not tried until December 8, 1986, five (5) days need to be excluded from the run-period to render the defendant's trial date timely under Rule 1100.

Instantly, no one disputes that the originally scheduled trial of the defendant was to occur during the October, 1986, term of court. However, the case was continued *by the court* from October, 1986 to November, 1986 trial term because of an overcrowded docket. Since court-related delay is, in itself, a justification for an extension (see *Commonwealth v. Hollingsworth*, 346 Pa.Super. 199, 499 A.2d 381 (1985)), the five (5) day delay in prosecuting the defendant was subsumed by the period elapsing between the October—November, 1986 trial term. Therefore, we need not examine the defendant's Interstate Agreement on Detainers argument since we find that the trial of the

accused, having taken place following the grant of a timely extension to the Commonwealth, was timely and not violative of Rule 1100.

We next turn our attention to the issue raised at No. 1499 Pittsburgh 1987, i.e., the Commonwealth contests the lower court's grant of a new trial to the defendant on the ground that the prosecution's peremptorily striking the sole black person from the jury panel was not violative of the standards enunciated in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The Supreme Court in *Batson* allowed a defendant claiming discrimination in selecting the venire to prove a prima facie case of the same by establishing that:

> ... he is a member of a cognizable racial group, ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

476 U.S. at 97–98, 106 S.Ct. at 1723–1724 (Citations omitted). Also, the Court went on to set forth some of the indicia reflective of a purposeful exclusion of a racial class from the jury, as well as the rebuttal available to the prosecution once a prima facie establishment of the same has occurred; to-wit:

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Sim-

ilarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose....

Once the defendant makes out a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race.

\*       \*       \*       \*       \*       \*

The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race. Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirming his good faith in individual selections." \* \* \* The prosecutor ... must articulate a neutral explanation related to the particular case to be tried. The trial court will then have the duty to determine if the defendant has established purposeful discrimination.

476 U.S. at 96–98, 106 S.Ct. at 1723–1724 (Citations omitted; footnote omitted).

■ The facts at bar, viewed in light of the aforesaid, indicate that once the prosecuting attorney excluded a Ms. Savage from the list of prospective jurors, she was called to side bar to give her reasons for the action she took, and the following exchange ensued:

Mrs. Barr: Your Honor, in selecting the jury panel, there is a juror, number 15, Mary Savage, she is a black juror,

as well as there is a black defendant in this case. My reason for striking her is that her address is on Wallis Avenue. Mr. Chapman, a codefendant [2] in this case, gave as an alibi a Michelle Ferguson who lives at Spearman. To my knowledge, Spearman and Wallis are very close together, as well as Farrell is a very closeknit community. The other consideration is, Mrs. Savage has 10 children between the ages of 17 and 29, and I would be striking her in the consideration that some of her children may know either Mr. Chapman, Michelle Ferguson's boyfriend, or Michelle Ferguson herself.

The Court: Do you have any objection?

Mr. Dill: I object Your Honor. On the objection, the streets aren't close enough. She would strike most of the people that had a Farrell address then.

Mrs. Barr: There is one other juror that has a Farrell address that is not close.

Mr. Dill: Also, Your Honor, those questions should have been asked for that knowledge. There is no showing that her—that they know each other or anything else. These two codefendants live in Youngstown. The only knowledge they may have of the witness, she is not going to testify, the one witness for Chapman is not going to testify.

Mrs. Barr: Mr. Chapman is going to testify and it was asked whether she knew him and there was no response on that, but I don't feel I can take the chance. I don't feel the Supreme Court says I'm not permitted to strike any ...

The Court: No, I think you have to have a particular reason, and I think there is an adequate particular reason. We recognize your objection.

Mr. Dill: I would like to ask the question, whether she knows a certain person then.

Mrs. Barr: I don't believe that's necessary Your Honor.

Mr. Dill: Yes, I believe it is. Basically she lives in Farrell.

The Court: I think there are additional reasons, and one of the primary considerations, Mrs. Savage has how many children.

Mrs. Barr: Ten children between the ages of 17 and 29 which would be in the area of Mr. Chapman, Mr. Jones and Michelle Ferguson.

The Court: I think that's an adequate reason.

Mr. Dill: But if she doesn't know the people.

The Court: How does she know her children don't?

Mr. Dill: So what if her children do, it's whether she knows them. If her children—Your Honor if her children know him, but she doesn't know if they know them, what difference does it make?

The Court: If she doesn't, what's to stop her from this evening, I'm sure the Court cautions people not to discuss the cases at home.

Mr. Dill: I think it's—you can't specifically dismiss a person because they live in Farrell.

Mrs. Barr: I think the Court is well aware there are cases where you even ask a person if they vaguely know someone and the next day they come in and say they know someone. I don't feel I can take that risk considering the circumstances.

The Court: We'll permit the strike. We certainly recognize your objection.

Mr. Dill: Okay. Thank you Your Honor.

[2] Mr. Chapman was not tried along with Mr. Jones, although he was also charged criminally for his participation in the purse snatching incident. Mr. Chapman was a Commonwealth witness against Jones. Mr. Jones had given notice of an alibi defense and had listed Ms. Ferguson as the alibi witness, but that defense had apparently been abandoned by trial time.

Initially, the trial court denied the defendant's *Batson* claim. It was only with the filing of post-trial motions, and the trial court's reassessment of the prosecution's explanations for striking Ms. Savage, that the trial court reversed its position. In so doing, it stated:

In the instant case there was only one black person on the venire. Following the lead of *United States v. Cha-*

*lan,* [812 F.2d 1302 (10th Cir.1987)], and *Garrett v. Morris,* [815 F.2d 509 (8th Cir.1987)], we hold that the prosecution's use of a peremptory challenge to eliminate the only member of the defendant's race raises inference of discrimination and entitles the defendant to an explanation. Moreover, we believe that the explanation offered by the Commonwealth is evidence of racial motivation since it challenged the black, but not the white, venireperson from Farrell.

\*     \*     \*     \*     \*     \*

The Commonwealth's reasons for striking Ms. Savage from the jury suffer two infirmities. First, the danger envisioned by the prosecution seems pretty remote. Second, the challenge of a black woman because she lives in a certain city and the acceptance of a white man who lives in the same city raises the specter of racial discrimination.

The prosecution's concern that Ms. Savage or one of her children might know Ferguson is remote because Ferguson was not a party or a witness in this case.... In the instant case we have only an alibi witness from a companion case who would not be called to testify. Moreover, the individual for whom Ms. Ferguson gave alibi evidence was himself a witness for the prosecution against Defendant Jones. We do not see how Ms. Savage's or her children's knowledge of Ms. Ferguson could therefore be prejudicial to the Commonwealth's case.

Even if it were relevant if a prospective juror knew Ferguson, however, we are troubled by the fact that the prosecution struck Ms. Savage but not Mr. Kauffman, the white man who lived in the same area as Ms. Savage and Ms. Ferguson. The only differences between the two that we can see are their respective races and the fact that Ms. Savage has children but that Mr. Kauffman does not. The Commonwealth also stated at side bar that Mr. Kauffman does not live as close to Ms. Ferguson but the Defendant stated during oral argument of the post-trial motions that Mr. Kauffman actually lived closer and the prosecution did not dispute it.

There is no reason which we can see which would indicate that Savage is more likely to know Ferguson than is Kauffman. And as for the children, the Court counsels the jurors not to speak to anyone about the case before its conclusion. We are reticent to find that jurors would disregard this instruction when we have no evidence to suggest that they would. Consequently, we believe that their is no articulable difference between prospective jurors Savage and Kauffman but race. We, therefore, reverse our former ruling and grant Defendant's request for a new trial.

The eloquence with which the trial court stated its assessment of the facts need not be embellished by this Court. However, we would add that *Batson's* requirements that a defendant challenging an empaneled jury be a member of a cognizable racial group (instantly, the race is negro) and that the prosecution's reasons for peremptorily excluding a member of a racial group were satisfied in the trial court's evaluation of the defendant's claim of racial discrimination in the selection of the jury.

Moreover, it would appear that the prosecution was merely "assuming" that Ms. Savage's proximity to Ms. Ferguson's residence created the potential for partiality in favor of the defendant. Carrying the presumption to its logical end, which we note is not condoned by *Batson,* we ponder why Mr. Kauffman's impartiality was not rendered suspect because of his proximity to the defendant's residence. It is obvious to this Court, as it was to the court below, that the reasons proffered by the prosecution for its actions were merely veiled attempts to exclude the *only* black person on the list of prospective jurors because of her race and not because of her residence or the number of siblings she had who *might* know of Ms. Ferguson—transparent reasons not justifying the action taken in removing Ms. Savage from the juror selection process.

Accordingly, we join in the actions of the court below and affirm the appeal of the order docketed at No. 1413 Pitts-

502

burgh 1987 and the order docketed at No. 1499 Pittsburgh 1987.