572 A.2d 1217

**COMMONWEALTH of Pennsylvania**

v.

**Joseph Louis YOUNG, a/k/a Yusuf Ali, Appellant.**

Supreme Court of Pennsylvania.

Argued April 13, 1989.

Decided March 29, 1990.

376

378

Stephen G. Heckman, Norristown, for appellant.

Mary Killinger, Chief, Appeals Div., Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

OPINION

NIX, Chief Justice.

This is a direct appeal from the judgment of sentence of death imposed by the Court of Common Pleas of Montgomery County. A jury returned a verdict of guilty of two counts of first degree murder, one count of attempted murder, burglary, criminal trespass and aggravated assault. In addition to the statutory review this Court is required to undertake, appellant raises 24 points of error for our consideration. For the following reasons we are constrained to remand this matter to the trial court for a resentencing hearing pursuant to 42 Pa.C.S. § 9711(h)(4).

As in all capital cases this Court is first required to review the sufficiency of the evidence to determine whether there was the evidence necessary to support the conviction, without regard to whether the appellant has challenged the conviction on that ground. 42 Pa.C.S. § 9711(h). *Commonwealth v. Aulisio*, 514 Pa. 84, 522 A.2d 1075 (1987); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The test for establishing the sufficiency of the evidence has been defined as follows:

[T]he test of sufficiency of evidence is whether, viewing all of the evidence admitted at trial, together with all

reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Jackson,* 506 Pa. 469, 473, 485 A.2d 1102, 1103 (1984); *see also, Commonwealth v. Macolino,* 503 Pa. 201, 469 A.2d 132 (1983). The evidence produced by the Commonwealth in this case unquestionably meets the prescribed standard and would support the conviction for first degree murder.

The evidence at trial established that, during the early morning hours of May 27, 1986, Dr. Ismail al Faruqui and his wife, Lois el Faruqui were brutally stabbed to death in their Wyncote home. Their pregnant daughter, Anmar el Zein, was also stabbed but both she and her child survived the attack. While the assailant was attacking Dr. Faruqui, Mrs. Zein was able to reach a telephone and call for help. When the police arrived both Dr. and Mrs. Faruqui were dead and Mrs. Zein was barely conscious.

The police found the murder weapon, a 15–inch survival or "Rambo-type" knife, in the second floor study of the house. They also found rubber surgical gloves covered with blood and a cloth used by the assailant as a mask. In the neighbor's trash container, the police uncovered the sheath of the murder weapon and a screwdriver used to gain entry into the home through a pantry window. The investigation produced several latent fingerprints that did not belong to the Faruquis, along with hair follicles and blood stains that could not have come from the victims.

Months later, detectives in Montgomery County received an anonymous phone call which suggested they compare the latent fingerprints found at the scene of the crime with those of the appellant. Both sets of prints were sent to the FBI for analysis and were determined to be a match. An arrest warrant was issued for appellant. In order to serve the arrest warrant, the detectives immediately contacted the Philadelphia Police Department where appellant was

incarcerated for an unrelated offense. The Philadelphia detectives arranged for him to be transported from the detention facility to the homicide division for the Montgomery Police to serve him with the warrant for his arrest.

When appellant arrived at the Philadelphia Police Administration Building, two detectives took biographical information from him. At the conclusion of this inquiry appellant said, "This is about Dr. Faruqui, isn't it?" The Philadelphia detectives immediately informed him of his rights and proceeded to question the appellant further about the murders of the Faruquis. Appellant stated he had committed the murders and was willing to sign a written confession. At that point, the Montgomery County police arrived and served the arrest warrant on the appellant. The appellant then repeated his confession in the presence of the Montgomery police officers and the statement was transcribed by one of the Philadelphia detectives.

The appellant was arraigned in Philadelphia and then transported to Montgomery County for a second arraignment. After the appellant's second arraignment, a search warrant was issued for blood, saliva and urine samples of the appellant for comparison with the blood left at the scene. Also included in the search warrant was a request for hair samples. Upon comparison, it was determined that the appellant's blood and hair matched those left by the assailant.

At trial, the appellant conceded the confession was given voluntarily and he in fact committed the murders. He relied solely upon the defense of insanity. He claimed voices instructed him to commit these murders because the victims were having homosexual relations with Malaysian students. Two psychiatrists for the defense testified that, while the victims were not involved in illicit conduct with students, the appellant had a deeply hidden psychosis toward homosexuals and his belief that the victims were so involved triggered this attack. The Commonwealth provided three expert witnesses, each of whom stated appellant

was not suffering from criminal insanity at the time of the murders.

In order to establish murder in the first degree, the Commonwealth must prove the actor specifically intended to kill which, in turn, is shown by establishing premeditation and deliberation. *Commonwealth v. Garcia*, 505 Pa. 304, 310, 479 A.2d 473, 476 (1984). It is clear from the facts presented at trial the Commonwealth produced sufficient evidence to support a conviction for first degree murder. In addition to the confession, there were several pieces of scientific evidence which further inculpated appellant. The matching fingerprints, blood types and hair samples all indicate he committed these acts. Finally, as previously mentioned, appellant has not denied he committed the acts; instead he has offered his alleged insanity in defense. The jury was free to believe the insanity defense or entirely reject such a claim. *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728, *cert. denied*, 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987).

The Commonwealth, as verdict winner, is afforded the inference that the specific intent required for first degree murder can be proven by the conduct of the perpetrator, including the use of a deadly weapon on a vital part of the body. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 445 A.2d 1203 (1982); *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). In this case, Dr. Faruqui was stabbed 15 times and Mrs. Faruqui was stabbed 7 times. Clearly, the repetitive stabbing in vital areas of the body is an indication of specific intent to kill. *Commonwealth v. Pronkoskie, supra; Commonwealth v. O'Searo, supra.* Furthermore, in appellant's confession he stated he had circled the area of the victims' home the night before the murders to plan an escape route which would attract the least attention. This conduct supports the Commonwealth's claim that appellant knew his intended action was wrong but deliberately completed the acts. Therefore, the Commonwealth unquestionably produced sufficient evidence to support the verdict of first degree murder.

Having concluded that the evidence was sufficient, we now address the various claims of error.

## I

### Pre-trial Errors

■ The first claim of error concerns the trial court's denial of appellant's motion to change venue due to the prejudicial impact of pre-trial publicity. Appellant asserts the community was saturated with articles about the incident and therefore the publicity was *per se* prejudicial. *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987); *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985); *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976).

■ In this case the trial court properly withheld a decision on the change of venue motion until after the *voir dire* was completed. *Commonwealth v. Romeri*, 504 Pa. 124, 470 A.2d 498 (1983), *cert. denied*, 466 U.S. 942, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984). During *voir dire* it became clear several of the venirepersons had read or heard some account of the event. However, in denying the appellant's motion, the court concluded no juror had expressed a fixed opinion or bias toward the appellant. *Commonwealth v. Bachert*, 499 Pa. 398, 453 A.2d 931 (1982), *cert. denied*, 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983). It is clear the jury need not be ignorant of the facts or issues involved in the case. *Irvin v. David*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). As this Court stated in *Commonwealth v. Drew*, 500 Pa. 585, 588, 459 A.2d 318, 320 (1983), "The law recognizes that prospective jurors were not cultivated in hermetically sealed environments free of all beliefs and views. The relevant question is therefore whether any biases or prejudices can be put aside."

■ After a review of the published material, it does not appear that any were inflammatory or prejudicial. Thus the trial court did not abuse its discretion in denying appellant's motion. *Commonwealth v. Rigler*, 488 Pa. 441, 412

A.2d 846 (1980), *cert. denied,* 451 U.S. 1016, 101 S.Ct. 3004, 69 L.Ed.2d 387 (1981). Furthermore, appellant exercised only eight of his twenty peremptory challenges and therefore failed to preserve the question for review. *Commonwealth v. Morales,* 508 Pa. 51, 494 A.2d 367 (1985); *Commonwealth v. Romeri, Supra; Commonwealth v. McGrew,* 375 Pa. 518, 100 A.2d 467 (1953).

The appellant also raises as error the death qualification process used by the Commonwealth. He argues this Court should reconsider the disqualification of jurors who equivocate on the death penalty issue. Appellant suggests the Commonwealth should be required to provide a neutral explanation for disqualification of death qualified jurors similar to the analysis used in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (exclusion of jurors for race). However, the propriety of exclusions based upon a juror's reluctance to render the death penalty has been accepted by this Court, over this writer's dissent, in numerous cases. *Commonwealth v. Aulisio, supra; Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984); *Commonwealth v. Maxwell,* 505 Pa. 152, 477 A.2d 1309, *cert. denied,* 469 U.S. 971, 105 S.Ct. 370, 83 L.Ed.2d 306 (1984). This case does not present a unique factual situation sufficient to warrant distinguishing this case from our prior decisions.

■ The appellant raises a true *Batson* claim in that the Commonwealth excluded a potential juror with a peremptory challenge based upon the race of the juror. The appellant argues that the Commonwealth's peremptory challenge to the sole black venireperson capable of sitting on the jury establishes a *prima facie* case for discrimination under *Batson.* The appellant cites *Commonwealth v. Jones,* 374 Pa.Super. 493, 543 A.2d 579 (1988), for the position that one exclusion is sufficient to establish a *prima facie* case. However, in *Jones,* the prosecutor refused to offer a neutral explanation for the exclusion. In this case the prosecutor advised the court that the venireperson had a son-in-law who was a County detective and to avoid any possible claim

of bias by the appellant the prosecutor chose to peremptorily challenge her. This explanation was a sufficient neutral reason to justify the exclusion. *Commonwealth v. Hardcastle,* 519 Pa. 236, 546 A.2d 1101 (1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990), *(citing, Batson v. Kentucky, supra* ).

■ The appellant further claims the trial judge erred by excluding venireperson, Gail Kades, for cause due to financial hardship. He concedes the exclusion of jurors for cause is within the sound discretion of the trial judge. *Commonwealth v. Johnson,* 484 Pa. 545, 400 A.2d 583 (1979); *Commonwealth v. Black,* 474 Pa. 47, 376 A.2d 627 (1977). However, he contends the exclusion of a juror for business reasons alone was an abuse of discretion. The trial judge believed the venireperson's interest in keeping her flower shop open was of such a pressing concern that, if forced to serve, this distraction would have impaired her judgment. We cannot conclude that such an assessment was an abuse of discretion.

■ The appellant next claims his confession should have been supressed for various reasons. First, he argues there was no probable cause for an arrest warrant to be issued and thus he was being wrongfully detained when the confession was given. He also asserts the arrest warrant was the product of information from an anonymous informant with untested reliability. However, the affidavit supporting the arrest warrant did not mention an informant; it relied solely upon the matching fingerprints. The question of reliability is not called into play when a suggestion to compare fingerprints (those of appellant with those found at the scene) is made. Appellant's privacy was not invaded nor was it necessary to invade his privacy in order to make the comparison, for the fingerprints were already in the police files. Upon receiving the suggestion, the police used those prints for the comparison. It is not an invasion of a person's privacy to use fingerprints already a part of police records in the course of an investigation.

 Appellant contests the admission of the confession as a violation of the six-hour rule as set forth in *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977). In *Davenport*, this Court held a defendant must be arraigned within 6 hours after an arrest. Therein we ruled any statement taken in violation of this rule must be excluded. *Id.*, 471 Pa. at 286, 370 A.2d 306. Appellant here contends he was arrested when he was removed from the detention facility at approximately 7 p.m., but was not arraigned until 2:10 a.m. in Montgomery County in clear violation of the six-hour rule. He asserts the arraignment in Philadelphia at 12:58 a.m. did not toll the six-hour period because Philadelphia was not the jurisdiction which issued the warrant of arrest.

The purpose sought to be accomplished by the rule established in *Davenport* reflects the importance of assuring an accused is informed of his or her rights during a custodial investigation by a neutral judicial authority in order to check abuses of the interrogation process utilized by arresting authorities. In *Davenport* this Court stated:

> The Pennsylvania Rules of Criminal Procedure require that an individual who is arrested be brought before a judicial officer for preliminary arraignment without unnecessary delay.... The purpose of this requirement is to insure that the accused is promptly afforded the protections embodied in Pa.R.Crim.P. 140.... Rule 140 provides that the court shall inform the accused of the charges against him, his right to counsel, his right to bail and his right to a preliminary hearing. Thus, the requirement of a prompt arraignment serves to protect the accused's right to know "the nature and cause of the accusation against him," ..., and his right to reasonable bail.... It also protects the accused's right to be free from unreasonable seizure of his person.

The requirement of a prompt arraignment reflects the importance of having the accused informed of these rights by a neutral judicial authority, ..., and serves to

check against abuse of an accused's rights by the arresting authority....

471 Pa. at 282–3, 370 A.2d at 304 (1977) (citations and footnotes omitted).

The facts that these rights were given by a judicial officer in Philadelphia and that the warrant of arrest issued from Montgomery County is of no moment.[1] *Davenport* was designed to protect those rights conferred under the federal and state constitutions and which are not impacted by the territorial division within this Commonwealth. In this instance the warnings were rendered within the time proscription set forth in *Davenport* by a neutral magistrate. The circumstances here, the warrant being issued by the police authorities of Montgomery County and the interrogation taking place in Philadelphia County, are not within the scope of the interest protected by the rule in *Davenport*. It is also noted no challenge is being raised concerning the Miranda warnings given prior to the commencement of the interrogation.

The final objection relating to appellant's statement is raised under Article I, section 9 of the Constitution of this Commonwealth. We are being importuned to interpret this provision of our Constitution as requiring a finding of a valid waiver of a post-arrest right to counsel must have been preceded by an explanation to the accused of the perils of self-representation "and perhaps further inquiry along the line of stating that the advantages to having a lawyer would be that a lawyer would investigate the charges lodged against an accused and assist him in preparing a defense and aid him in deciding what type of strategy to employ at trial." Appellant's brief, pp. 49–50. The thrust of this argument is to adopt the distinction between the right to counsel during pre-arrest interrogations under the Fifth Amendment and interrogations after formal proceedings have been commenced under the Sixth Amendment

1. The interrogation was in fact conducted by members of the Philadelphia Police Department and assisted by members of the Montgomery County Police Department.

which the federal decisions appeared to be developing prior to the United States Supreme Court's decision in *Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). See dissent of Mr. Justice Stevens, joined by Mr. Justices Brennan and Marshall in *Patterson,* 487 U.S. at 301, 108 S.Ct. at 2399–2400. We are constrained to decline this invitation. The potential harm of an incriminatory statement is the same whether it is made prior or subsequent to formal arrest. The need for counsel in either instance is equally compelling. To enhance the right of counsel following arrest would in turn deprecate the importance of counsel in pre-arrest interrogations. We decline to make such a distinction under Article I, section 9 of our Constitution.

■ Appellant next alleges that the trial court erred by admitting certain physical evidence. He claims that the search warrant issued after the appellant's second arraignment was overly broad, in that it should have been limited to blood and hair samples. He contends urine and saliva samples were unnecessary to compare with the evidence found at the murder scene and thus the search warrant was overbroad and illegal according to *Commonwealth v. Santner,* 308 Pa.Super. 67, 454 A.2d 24 (1982), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3585, 82 L.Ed.2d 883 (1984). In *Santner,* the Superior Court stated that a warrant would be unconstitutional under the Fourth Amendment if it is broader than could be justified by the probable cause on which the warrant was based. *Id.,* 308 Pa.Superior Ct. at 71, 454 A.2d at 25–26.

The Commonwealth claims all of the items contained in the search warrant were necessary to make an accurate comparison of the blood. Both urine and saliva can aid in the identification of blood types. Therefore, even under *Santner,* probable cause justified the breadth of this search warrant.

■ The appellant also contests the legality of this search warrant because it was served at 4:50 a.m. The appellant relies upon Pa.R.Crim.P. 2005(e) for exclusion of

the evidence obtained because that rule specifically requires a search warrant be served between 6 a.m. and 10 p.m.[2] Under this rule, searches may be conducted outside the time frame provided, when authorized by the issuing body. Thus this deviation must be considered technical since it has not been alleged such authorization, if requested, would not have been granted. Nor has appellant shown how he was disadvantaged as a result of this violation. A technical violation alone should not justify exclusion of such evidence. *See, Commonwealth v. Johnson,* 315 Pa.Super. 579, 462 A.2d 743 (1983); *Commonwealth v. Mourar,* 332 Pa.Super. 258, 481 A.2d 352 (1984). Without the implication of a constitutional right such a violation must be considered harmless error. *Commonwealth v. Revtai,* 516 Pa. 53, 532 A.2d 1 (1987); *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421 (1985).

The appellant next contends the fingerprints taken after his arrest and second arrignment should be suppressed because there was no search warrant issued for his prints. The appellant asserts there were no exigent circumstances to justify the failure to first obtain a warrant before taking the fingerprints. However, appellant fails to acknowledge that once a proper arrest has been made no warrant is necessary for taking fingerprints. Fingerprinting is in no way testimonial in nature and therefore does not require the protection of the Fifth of Sixth Amendments. *U.S. v. Euge,* 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980); *U.S. v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Commonwealth v. Ellis,* 445 Pa. 307, 284 A.2d 735 (1971).

**2.** Rule 2005(e) states in pertinent part,
Each search warrant shall be signed and sealed by the issuing authority and shall:

 * * * * * *

(e) Direct that the warrant be served in the daytime unless otherwise authorized on the warrant, PROVIDED THAT, for purposes of the Rules of Chapter 2000, the term "daytime" shall be used to mean the hours of 6 a.m. to 10 p.m.;

## II.

### *Trial Errors*

In the first of the alleged trial errors, appellant submits the trial judge abused his discretion by permitting Albert Levitt to testify as an expert in psychology. He contends Mr. Levitt was not qualified, as a matter of law, to testify as an expert because he offered no evidence of practical experience and has only obtained a master's degree in Psychology.

The determination of whether a person is qualified as an expert in this particular field is left to the discretion of the trial judge. *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987); *and see, Commonwealth v. Gallagher*, 353 Pa.Super. 426, 510 A.2d 735 (1986). Furthermore, that determination is based solely on whether their opinion will aid the trier of fact in finding the truth of the issues involved. *Commonwealth v. Peterkin, supra; Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976); *see also, Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408 (1984). In this case, Mr. Levitt testified that he was licensed in clinical psychology and had been associated with Temple University's Law & Psychology program for over twenty years. It is clear from these facts that the trial judge did not abuse his discretion by qualifying this witness as an expert.

The appellant continues his attack on the expert testimony of the Commonwealth by asserting that the testimony of both Dr. Camiel and Dr. Schwartzman violated his right against self-incrimination and his right to counsel under the Fifth and Sixth Amendment. The appellant cites *Commonwealth v. Pomponi*, 447 Pa. 154, 284 A.2d 708 (1971), which held that post-arrest interrogations by psychiatrists violate the Fifth and Sixth Amendments.

The distinction to be made between that case and the present situation is that in *Pomponi* the psychiatrist was part of the prosecutorial investigation. Here, neither of the

psychiatrists evaluated the appellant at the behest of the prosecutor. Dr. Camiel interviewed the appellant as part of the normal confinement process, prior to the appellant being released into the general population of the detention facility. Dr. Schwartzman examined the appellant in response to complaints by appellant that he felt suicidal. Neither doctor ever questioned appellant about facts concerning the Faruqui murders. At trial, the testimony of each was limited to evaluations of the mental state of appellant. Such testimony was also available to appellant, if he had chosen to use it. Clearly, examinations which were not part of the prosecutor's investigation were not impacted by this Court's holding in *Pomponi* and were not violative of either the Fifth or Sixth Amendments.

■ Appellant next argues the trial judge impermissibly allowed inflammatory photographs of the victims to be presented to the jury. He suggests the photographs were inadmissible to establish specific intent because specific intent had been admitted by the appellant. Thus these photographs were used only to incite and prejudice the jury.

■ Photographs of the scene may be admitted into evidence if they are relevant and they are not of a nature that would unduly inflame the passions of the jury. *Commonwealth v. Duffey*, 519 Pa. 348, 548 A.2d 1178 (1988); *Commonwealth v. Schroth*, 479 Pa. 485, 388 A.2d 1034 (1978). If a photograph is judged not to be inflammatory, it is admissible if it is relevant and can assist the jury in understanding the facts. *Commonwealth v. Garcia*, 505 Pa. 304, 479 A.2d 473 (1984). The fact that blood is visible does not necessarily require a finding that the photograph is inflammatory. *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980).

In this case the photographs complained of were black and white photographs of the victims in the conditions they were in when found by the police. The Commonwealth offered these photographs to depict the victims' injuries as well as to illustrate the brutality of the act. *See, Common-*

*wealth v. Taylor,* 362 Pa.Super. 408, 524 A.2d 942 (1987); *Commonwealth v. McClain,* 325 Pa.Super. 29, 472 A.2d 630 (1984). The trial judge reviewed these photographs carefully and excluded some while admitting others. After reviewing the admitted photographs, we conclude they did not possess the inflammatory quality which would render them inadmissible.

█ Appellant also argues the trial judge impermissibly limited the definition of *"quality"* under the M'Naghten test for insanity. He contends he did not understand the quality of the act he committed because he did not know the victims were innocent of the homosexual allegations and therefore he was legally insane. To bolster this position, it is asserted by appellant that to understand the nature and quality of an act, as is required by M'Naghten, the definition of quality must include some reference to the innocence or guilt of the victim. Appellant claims to have been prevented from showing insanity under his version of McNaghten because the trial judge refused to expand the definition of *"quality"* precluded appellant from offering psychiatric evidence that would have shown he did not understand the victims were innocent and thereby unable to appreciate the quality of the act. However, this argument is totally fallacious.

█ The test for insanity in this Commonwealth has been centered upon a defendant's ability to understand the nature and quality of his acts. *Commonwealth v. Reilly,* 519 Pa. 550, 549 A.2d 503 (1988). The nature of an act is that it is right or wrong. The quality of an act is that it is likely to cause death or injury. Legal sanity is "demonstrated by the murderers knowledge that he or she was killed and the knowledge that it was wrong." *Commonwealth v. Banks,* 513 Pa. 318, 346, 521 A.2d 1, 14, *cert. denied,* 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987).

Here, the appellant does not rely on a delusion or impulsive action to support his claim of insanity. Appellant's argument implicitly concedes his ability to distinguish between right and wrong. In effect, he is contending that his

judgment was marred by a mistake of fact, the mistaken fact being his belief that the victims were involved in illicit homosexual behavior. This does not reflect an impairment in his reasoning process, which is the core of the insanity defense, but merely a flawed judgment based upon erroneous information. Such a mistake does not in any way reflect upon the mental capacity of the individual.

 Appellant additionally posits the trial court improperly instructed the jury with respect to mental illness. He avers the trial judge improperly placed the burden of proof on the appellant to establish grounds for a finding of guilty but mentally ill, pursuant to § 314. *See* 18 Pa.C.S. § 314. That section provides in pertinent part:

GUILTY BUT MENTALLY ILL

(a) General Rule.—A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

It is argued the judge in this charge improperly set the standard of proof at beyond a reasonable doubt. The trial judge's instructions concerning a verdict of guilty but mentally ill was taken directly from Subdivision (5) of the Pennsylvania Suggested Standard Criminal Jury Instructions 5.01A.[3] The appellant contends that these instructions relating to a claim under § 314 violated this Court's holding in *Commonwealth v. Sohmer*, 519 Pa. 200, 546 A.2d 601 (1988), which was decided after the trial of this case.

In our decision in *Commonwealth v. Sohmer, supra*, we stated this verdict does not address the defendant's legal responsibility for the acts committed, but rather reflects a

---

**3.** (5) "Guilty but mentally ill" becomes a possible verdict when a defendant offers but fails to prove a legal insanity defense. A jury may return such a verdict when it finds beyond a reasonable doubt that the defendant committed the crime alleged and that the defendant, although the jury did not find him legally insane, was mentally ill at the time of the crime.

penological concern that should be considered in determining the appropriate sanction for the offense. In the usual situation the judge is entrusted with determining the appropriate sentence, and the jury's function is confined to determining the guilt of the accused. The verdict providing for "guilty but mentally ill" represents an exception to this general rule. By rendering this judgment, the jury is permitted to advise the sentencing judge to consider the fact of mental illness in the exercise of his sentencing decision. Capital cases are unique in that the jury and not the judge sets the penalty in such cases. The consideration of a possible verdict of guilty but mentally ill is a matter that would appropriately be rendered by a jury in a capital case during the sentencing phase as opposed to the guilty phase. We permit the jury to rule upon this penological concern during the guilt phase in all other cases simply because they have no opportunity for input in the sentencing phase. That consideration is not present in capital cases. Even if we were to treat our holding in *Sohmer* as having a retroactive effect, the error in this case would be harmless. *Commonwealth v. Duffey*, 519 Pa. 348, 548 A.2d 1178 (1988); *Commonwealth v. Norris*, 498 Pa. 308, 446 A.2d 246 (1982); *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

The next claim of error involves a comment made by the prosecutor during his closing remarks. During closing argument, the prosecutor stated:

If you believe the opinions of Dr. Byron, Dr. Sadoff and Dr. Cooke, then the defendant is mentally ill and entitled to that verdict at your hand. I don't know whether you believe it or not but I know in my opinion and as I view the evidence—of course, it is up to you—I don't think the evidence supports that finding.

(N.T. at p. 571)

The appellant argues the statement of the opinion of the prosecutor is *per se* misconduct and a new trial should be granted. *Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983); *Commonwealth v. Potter*, 445 Pa. 284, 285

A.2d 492 (1971). However, the appellant has overstated the holding in *Anderson.* In *Anderson,* we stated:

> Certainly, it is improper for a prosecutor to express a personal belief or opinion as to the truth or falsity of evidence of defendant's guilt, including the credibility of a witness. ... However, it is equally clear that comments by the Commonwealth's attorney do not constitute reversible error unless the "unavoidable effect of such comments should be to prejudice the jury, forming in that they could not weigh the evidence objectively and render a true verdict."

*Id.* 501 Pa. at 282, 461 A.2d at 211 (citations ommitted).

In this case, the opinion of the prosecutor did not create a fixed bias or hostility in the jury. Included in the alleged offensive comment by the prosecutor was the phrase, "of course it is up to you." This cautionary statement of the prosecutor removed any possible taint created by such a fleeting opinion. Furthermore, the trial judge, having heard the remark by the prosecutor, immediately interrupted the argument of the prosecutor and gave his own cautionary statement to the jury. The trial judge stated:

> Members of the jury, counsel in the course of their speeches to you may not express their personal opinion about any fact in dispute or about the credibility of any witness or about the force or effect of any of the evidence in the case. Counsel may certainly urge you to certain conclusions based upon the evidence, but counsel may not express their personal opinion and any such expression is to be disregarded by you.

(N.T. July 10, 1987 at p. 571)

Together these cautionary statements more than sufficiently neutralized the possible prejudice of the opinion of the prosecutor.

## III

### *Penalty Phase Errors*

■ Here, the appellant claims the verdict slip violated *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100

L.Ed.2d 384 (1988).[4] The appellant submits the verdict slip in this case forced the members of the jury to find mitigating factors unanimously. In *Mills*, the United States Supreme Court struck down a Maryland death sentencing scheme because it required jurors to find mitigating factors unanimously. The Court reasoned that if a jury was required to find mitigating circumstances unanimously, individual jurors would be precluded from considering mitigating circumstances not found unanimously and would thus be precluded from considering "any relevant mitigating evidence." *Id.* at 375, 108 S.Ct. at 1865 (*citing, Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).

In *Commonwealth v. Frey*, 520 Pa. 338, 554 A.2d 27 (1989) this Court first considered this issue and rejected a claim of a violation of *Mills*. In *Frey*, we stated that a verdict slip and oral instruction that complied substantially to the statute would not require unanimity of mitigating factors. *Id.*, 520 Pa. at 347, 554 A.2d 31. This Court next considered this issue in *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835 (1989). In *Billa*, the trial judge instructed the jurors that aggravating circumstances as well as mitigating circumstances were to be found unanimously. The trial judge stated:

> "Remember, the same rules apply about unanimity. And, of course, you may have no unanimity, too. But if you find an aggravating circumstance or a mitigating circumstance, you will find that it must be unanimous."

Id., 521 Pa. at 186, 555 A.2d 844.

After discussing the possibility of remanding the case for resentencing pursuant to the recently amended 42 Pa.C.S. § 9711(h)(4), we ultimately remanded the case for an entirely new trial due to the numerous trial errors involved.

In this case, the trial judge charged the jury in compliance with the statute. The trial judge stated:

> The crimes code provides that the verdict must be a sentence of death if the jury unanimously finds at least

**4.** Because of our resolution of this issue we will not address appellant's other claims of error relating to the penalty phase.

one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

(N.T. at 719)

The trial judge repeated this charge three times. However, the verdict sheet which was sent out with the jury during their deliberations inconsistently required the jury to find mitigating factors unanimously. The verdict sheet reads as follows, "We, the jury, *unanimously* find that the defendant has proven the following mitigating circumstances by a preponderance of the evidence." (Emphasis added.)

This inconsistency requires a remand of this case for resentencing pursuant to 42 Pa.C.S. § 9711(h)(4). That section was recently amended to enable this Court to remand death penalty cases for resentencing hearing, instead of substituting sentences of life imprisonment, when the alleged error occurs in the penalty phase. Such a construction would not only protect the defendant who complains of error during the sentencing stage but would also protect society. Section 9711(h)(4) now provides:

(4) If the Supreme Court determines that the death penalty must be vacated because none of the aggravating circumstances are supported by sufficient evidence or because the sentence of death is dispproportionate to the penalty imposed in similar cases, then it shall remand for the imposition of a life imprisonment sentence. If the Supreme Court determines that the death penalty must be vacated for any other reason, it shall remand for a new sentencing hearing pursuant to subsections (a) through (g).

The result in this case is required because it is impossible to determine from the record before us whether or not the jury disregarded the oral instruction and proceeded pursuant to the directions set forth on the written verdict slip. The following colloquy demonstrates the impossibility of ascertaining the exact answer to this question. In response

to the judge's queries regarding the mitigating circumstances, the following transpired:

MR. RYAN: [Foreman]

"We, the jury, unanimously find that the defendant has proven the following mitigating circumstances by a preponderance of the evidence: Number Two, the defendant was under the influence of extreme mental or emotional disturbance." "Yes."

Number Three, your Honor, we did not come to any conclusion.

"Number Eight: Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." "Yes."

These responses would be consistent with the jury's belief there had to be unanimity as to a mitigating factor before it could be considered in the judgment of any juror who may have found that factor to have been applicable. The fact that the court's oral instruction was correct cannot eradicate the incorrect information on the form, particularly in light of the above quoted responses. Since that jury has been discharged, the only available alternative is to remand the matter to the trial court for resentencing. As the United States Supreme Court aptly stated in *Mills:*

Evolving standards of societal decency have imposed a correspondingly high requirement of reliability on the determination that death is the appropriate penalty in a particular case. The possibility that petitioner's jury conducted its task improperly certainly is great enough to require resentencing.

486 U.S. at 383–84, 108 S.Ct. at 1870.

Accordingly, the verdict of guilty of murder in the first degree returned by the jury is affirmed and the matter is remanded to the trial court for resentencing pursuant to 42 Pa.C.S. § 9711(h)(4).