580 A.2d 308

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**D'Angelo M. JONES, Appellee.**

Supreme Court of Pennsylvania.

Argued March 6, 1990.

Decided Sept. 26, 1990.

James P. Epstein, Dist. Atty., Lorinda L. Hinch, Supervisory Asst. Dist. Atty., Mercer, for appellant.

Thomas Allen Dill, Fruit, Dill, Goodwin & Scholl, (court-appointed), Sharon, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

On June 5, 1986, the appellee, D'Angelo Jones and co-defendant, Kevin Chapman, were arrested by an officer of the Hermitage Police Department after information was received from a patron of the Shenango shopping mall that two men had been observed stealing an automobile from the shopping mall parking area. Both men were subsequently charged by criminal complaint with Theft by Unlawful Taking [1] and Criminal Conspiracy [2]. Prior to appellee's trial on the above stated charges counsel for the prosecution exercised one of her peremptory challenges to strike the sole black member from the jury venire. The challenge was contested by counsel for the defense on the basis of the United States Supreme Court's ruling in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court sustained the challenge after counsel for the prosecution stated her reasons on the record for the challenge. The appellee was then tried and was found guilty of all charges. He subsequently filed timely post-trial motions in the nature of a motion for a new trial and in arrest of judgment. The trial court dismissed his motion in arrest of judgment, in which a Rule 1100 violation was alleged, but granted him a new trial pursuant to his assignment of error as to the striking of the prospective juror. Both the Commonwealth and the appellee filed Notices of Appeal to the

1. 18 Pa.C.S.A. § 3921(a).
2. 18 Pa.C.S.A. § 903(a)(1).

Superior Court which consolidated the appeals and then affirmed as to both of the trial court's orders. 374 Pa.Super. 493, 543 A.2d 579. We then granted the Commonwealth's petition for allocatur to determine whether or not the lower courts had properly relied upon *Batson v. Kentucky, supra,* in deciding to grant the appellee a new trial. The issue before us is not a complaint that the Commonwealth indulges in invidious collection of prospective jurors. The complaint is that selection of jurors for the appellee's trial, i.e., the petit jury, called from the general venire for his immediate trial, were excluded by purposeful discrimination by the use of peremptory challenge. *Batson* has reduced the issue to the closer question of whether the use of peremptory challenges in an individual case to purposely remove prospective jurors for reasons of race represents a constitutional violation of equal protection. *Batson* holds that the Commonwealth cannot do indirectly what it cannot do directly, which is to say, that in selection of a petit jury they cannot achieve a prejudice denied them in the general collection of jurors.

*Batson* has altered the proofs required under *Swain* [3] to bring such complaint to a sharper focus. The *Swain* standard was addressed in essence to the larger question of whether the Commonwealth systematically and consistently excluded a racial group from jury service. The burden of proof of such exclusion required the defendant to prove more than was generally possible. *Batson* centers its attention directly to the immediate scene of trial in which one may complain that in "his case" discrimination is afoot by the use of peremptory challenge. *Batson* does not prohibit the use of peremptory challenge, nor does it require that an accused receive trial from any given proportion of members of his racial origin. It provides for inquiry into the use of peremptory challenges not their abolition. Within the limit of the numbers of peremptory challenges allowed at trial, their use has been sanctioned by long experience as a source in the balance of fairness.

3. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

The burden is on the defendant to present a *prima facie* case[4] that peremptory challenges are being employed to purposely exclude members of his race from jury service in his case. To do so, *Batson* arms the defendant with the presumption that peremptory challenges may permit "those to discriminate that are of a mind to discriminate" and that the defendant, being a member of a "cognizable racial group", which group the prosecutor has removed by peremptory challenge, raises a *prima facie* case of purposeful discrimination. When a defendant has satisfied this burden the state is then required to forward a neutral explanation for its decision to challenge the juror. As the court in *Batson* noted:

> The prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause (citations omitted) [b]ut the prosecutor may not rebut the defendant's *prima facie* case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race.

*Id.* 476 U.S. at 97, 106 S.Ct. at 1723. The record here reveals that prior to trial the appellee elected to pursue the defense of alibi as evidenced by the fact that a Notice of Alibi was filed. The alleged witness was a woman by the name of Michelle Ferguson whom both the appellee and the co-defendant maintained they were visiting, at her home, at the operative time. During the selection of the jury panel, counsel for the prosecution discovered that one of the prospective jurors, Mary Savage, lived in close proximity to Ms. Ferguson. This together with the fact that Mrs. Sav-

---

**4.** As the court in *Batson* noted, a defendant in order to present a *prima facie* case must demonstrate that 1) he is a member of a cognizable racial group; and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; 2) the peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate; and 3) the facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

age has ten children living with her prompted counsel for the prosecution to exercise one of her peremptory challenges. When defense counsel objected the following exchange occurred at side bar:

THE COURT: I think there are additional reasons, and one of the primary considerations, Mrs. Savage has how many children?

MRS. BARR: Ten children between the ages of 17 and 29 which would be in the area of Mr. Chapman, Mr. Jones and Michelle Ferguson.

THE COURT: I think that's an adequate reason.

MR. DILL: But if she doesn't know the people.

THE COURT: How does she know her children don't?

MR. DILL: So what if her children do, it's whether she knows them. If her children—Your Honor, if her children know him, but she doesn't know if they know them, what difference does it make?

THE COURT: If she doesn't, what's to stop her from this evening; I'm sure the Court cautions people not to discuss the cases at home.

MR. DILL: I think it's—you can't specifically dismiss a person because they live in Farrel.

MRS. BARR: I think the Court is well aware there are cases where you even ask a person if they vaguely know someone and the next day they come in and say they know someone. I don't feel I can take that risk considering the circumstances.

THE COURT: We'll permit the strike. We certainly recognize your objection.

(N.T. pp. 16–17).

The prosecution was concerned that the prospective juror's proximity to an important defense witness, the number of her children in the immediate neighborhood, the possibility of coincidental or deliberate transfer of information or knowledge to her or her children might create an undue burden on the juror. Against these concerns defense counsel advanced the argument that yet another juror resid-

ing in the same locale was not challenged, and that he, being white, should have been excluded by peremptory challenge as well, which he was not. This failure is alleged by the appellee to demonstrate that the Commonwealth's motives were therefore of the type which the Supreme Court sought to eliminate by its holding in *Batson.*

Were these two jurors possessed of such similar characteristics that all that separated them was their race, we would indeed be compelled to agree with this position. There was, however, a trait other than race which distinguished the two. That trait is parenthood. Without the benefit of children this mutually agreed upon juror, Mr. Kaufman, would not be subject to the same network of possible intrusive information as would Mrs. Savage, a parent of ten. When the trial judge initially evaluated the Commonwealth's exercise of peremptory challenges he found no indicia of deliberate racial prejudice. It was when he re-evaluated his decision and presumed that race was the only articulable reason for the challenge, that he fell into error. As our review reveals, here there were reasons beyond race which occasioned the challenge and therefore the rule in *Batson* remains inviolate.

Accordingly, the order of the Superior Court is reversed and the matter is remanded to the trial court for sentencing.

ZAPPALA, J., files a dissenting opinion in which NIX, C.J., and CAPPY, J., join.

ZAPPALA, Justice, dissenting.

I cannot join the opinion of the majority in this matter. Instead, I stand firmly behind the determination of the lower courts that Appellee had made a valid challenge to the striking of prospective juror Savage, under the principles announced in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that the Commonwealth's attempt to explain away the challenge was flawed.

As was succinctly noted by the trial court in reversing its denial of Appellee's claim:

> In the instant case there was only one black person on the venire. Following the lead of *United States v. Chalan*, 812 F.2d 1302 (10th Cir.1987), and *Garrett v. Morris*, 815 F.2d 509 (8th Cir.1987), we hold that the prosecution's use of a peremptory challenge to eliminate the only member of the defendant's race raises inference [sic] of discrimination and entitles the defendant to an explanation. Moreover, we believe that the explanation offered by the Commonwealth is evidence of racial motivation since it challenged the black, but not the white, venireperson from Farrell.
>
> \*    \*    \*    \*    \*    \*

The Commonwealth's reasons for striking Ms. Savage from the jury suffer two infirmities. First, the danger envisioned by the prosecution seems pretty remote. Second, the challenge of a black woman because she lives in a certain city and the acceptance of a white man who lives in the same city raises the specter of racial discrimination.

The prosecution's concern that Ms. Savage or one of her children might know Ferguson is remote because Ferguson was not a party or a witness in this case ... In the instant case we have only an alibi witness from a companion case who would not be called to testify. Moreover, the individual for whom Ms. Ferguson gave alibi evidence was himself a witness for the prosecution against Defendant Jones. We do not see how Ms. Savage's or her children's knowledge of Ms. Ferguson could therefor be prejudicial to the Commonwealth's case.

Even if it were relevant if a prospective juror knew Ferguson, however, we are troubled by the fact that the prosecution struck Ms. Savage but not Mr. Kauffman, the white man who lived in the same area as Ms. Savage and Ms. Ferguson. The only difference between the two that we can see are their respective races and the fact that Ms. Savage has children but that Mr. Kauffman does not. The Commonwealth also stated at side bar that Mr.

Kauffman does not live as close to Ms. Ferguson but the Defendant stated during oral argument of the post-trial motions that Mr. Kauffman actually lived closer and the prosecution did not dispute it.

There is no reason which we can see which would indicate that Savage is more likely to know Ferguson than is Kauffman. And as for the children, the Court counsels the jurors not to speak to anyone about the case before its conclusion. We are reticent to find that jurors would disregard this instruction when we have no evidence to suggest that they would. Consequently, we believe that their [sic] is no articulable difference between prospective jurors Savage and Kauffman but race. We, therefore, reverse our former ruling and grant Defendant's request for a new trial.

*Commonwealth v. Jones,* 374 Pa.Super. 493, 499–501, 543 A.2d 579, 582 (1988), quoting trial court opinion at pp. 12–13.

It is of great concern to me that the majority takes little note and fails to acknowledge the careful analysis of the trial court in reversing its decision. Nowhere in the majority opinion is there ever mentioned the existence of a white male prospective juror who appears to have the same infirmity, living in proximity to a witness, as did the black female prospective juror. Without reference to this critical factor, it would be easy to embrace the reasoning of the majority writer, for it would appear that the Commonwealth's explanation, while somewhat out of the ordinary, could overcome a prima facia showing of discrimination. Viewing in context *all* the facts together with the inferences drawn by the trial and Superior Courts, however, leads one to the unmistakable conclusion that the analysis of the majority is patently one-sided, myopic and in error. Where it is inescapable, as here, that the original determination is based upon cogent reasoning derived from the facts of record, I see no reason for this court to interefere with that decision.

Here it is unequivocally evident that the trial court found all the requirements necessary to make out a claim of discrimination under *Batson* and so stated for the record. I emphatically concur with that reasoned determination and would not disturb it on appeal.

I therefore respectfully dissent.

NIX, C.J., and CAPPY, J., join.