546 A.2d 601

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David L. SOHMER, Appellant.**

Supreme Court of Pennsylvania.

Reargued April 15, 1988.

Decided Aug. 10, 1988.

George E. Lepley, Jr., W. David Marcello, Williamsport, Philadelphia, for appellant.

Leonard N. Sosnov, John W. Packel, Philadelphia, for amicus curiae P.D. of Philadelphia.

Brett O. Feese, Kenneth A. Osokow, Williamsport, for appellee.

Robert A. Graci, Chief Deputy Atty. Gen., Harrisburg, for amicus curiae Atty. Gen., of Pennsylvania.

George S. Leone, Asst. Dist. Atty., Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Philadelphia, for amicus curiae D.A. of Philadelphia.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA PAPADAKOS and STOUT, JJ.

## OPINION

NIX, Chief Justice.

The issues raised in this appeal require us to determine, under subsection 314(a) of the Crimes Code, 18 Pa.C.S. § 314(a), whether there must be an assignment of the burden of proof, and if such an assignment is required, who possesses that burden of proving the offender was mentally ill at the time of the offense. We are also called upon to determine the measure of proof required to sustain such a finding. Because of the importance of these questions, we granted review. For the reasons that follow, we affirm the conviction of guilt but remand the matter to the trial court for reassessment of the evidence presented on the question of appellant's mental illness at the time of the commission of these offenses.[1]

Appellant was charged with murder, robbery, theft, carrying a firearm without a license, and the possession of instruments of crime in the shooting death of a convenience store clerk during a robbery. At trial, he contended insanity or, in the alternative, mental illness. The court below, sitting without a jury, after hearing all of the evidence, concluded that the Commonwealth had established beyond a

1. The issues presented by this appeal are difficult ones. The District Attorney of Philadelphia County, the Attorney General of Pennsylvania, and the Public Defender Association of Pennsylvania and Defender Association of Philadelphia were therefore requested to act as *amicus curiae.* The cogent arguments presented by each have been most helpful in aiding the Court in its resolution of the questions presented, and their assistance is appreciated.

reasonable doubt appellant's legal sanity at the time of the offense, and that appellant failed to establish, by a preponderance of the evidence, that he met the definition of mentally ill at the time the offense occurred. The trial court found appellant guilty of all of the charges. After the disposition of post-trial motions the court imposed a sentence of life imprisonment with a consecutive sentence of ten to twenty years for the conviction of robbery. On appeal to the Superior Court, three-judge panel affirmed the judgment of sentence by memorandum opinion and a per curiam order, 356 Pa.Super. 591, 512 A.2d 54 (1986).

On July 5, 1982, the Williamsport police were called to a convenience store where a clerk had been killed in the course of a robbery. The police obtained a description of a suspect from an eyewitness and began a search of the area. Thirty-five minutes after the shooting, the police stopped appellant and questioned him about the incident. The witness could not identify appellant, and he was released. Appellant then returned to the hotel where he maintained temporary lodging, obtained his bags, and checked out of the hotel. A cab dispatcher who was suspicious as a result of a conversation with appellant when the dispatcher inquired as to his destination, contacted police who intercepted appellant exiting the hotel. Appellant once again provided coherent responses to police questioning. In a satchel that appellant had in his possession the second time he was taken into custody was found the murder weapon, a money bag taken from the convenience store which was an object of the robbery, and other incriminating pieces of evidence.

Appellant presented the testimony of two mental health experts at trial. The first, a psychiatrist, diagnosed appellant soon after the incident as suffering from mental disease, paranoid schizophrenia. That witness expressed no opinion as to whether the illness existed at the time of the incident or whether appellant met the M'Naghten's Rule. The second expert, a clinical psychologist, also diagnosed appellant as suffering from paranoid schizophrenia, having examined him following commencement of the trial. In his

opinion, appellant met the definition of mental illness, having acted under an uncontrollable, compulsive drive in carrying out the killing. The Commonwealth, in turn, presented expert testimony on appellant's sanity. The expert, a psychiatrist specializing in forensic psychology, stated that appellant did not meet either the insanity or mental illness criteria of the respective statutes. To the contrary, the witness found appellant's behavior typical of organized, planned, goal-oriented, criminal behavior, and not the product of delusion.

The court accepted the Commonwealth's expert testimony and the other evidence from which an inference of sanity could be drawn, and found appellant able to form the legal *mens rea* to commit the crimes charged. The court in its opinion stated that it placed the burden of proof upon the defense to establish, by a preponderance of the evidence, that the defendant was mentally ill as defined in subsection 314(c)(1). As previously mentioned the Superior Court affirmed the action of the trial court.

The pertinent statutory provisions bearing upon the issues raised in this appeal provide:

§ 314. Guilty but mentally ill

(a) General rule.—A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

(b) Plea of guilty but mentally ill.—A person who waives his right to trial may plead guilty but mentally ill. No plea of guilty but mentally ill may be accepted by the trial judge until he has examined all reports prepared pursuant to the Rules of Criminal Procedure, has held a hearing on the sole issue of the defendant's mental illness at which either party may present evidence and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered. If the trial judge

refuses to accept a plea of guilty but mentally ill, the defendant shall be permitted to withdraw his plea. A defendant whose plea is not accepted by the court shall be entitled to a jury trial, except that if a defendant subsequently waives his right to a jury trial, the judge who presided at the hearing on mental illness shall not preside at the trial.

(c) Definitions.—For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty but mentally ill):

(1) "Mentally ill." One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

(2) "Legal insanity." At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.

(d) Common law M'Naghten's Rule preserved.—Nothing in this section shall be deemed to repeal or otherwise abrogate the common law defense of insanity (M'Naghten's Rule) in effect in this Commonwealth on the effective date of this section.

1982, Dec. 15, P.L. 1262, No. 286, § 1, effective in 90 days.

§ 315. Insanity

(a) General rule.—The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense.

(b) Definition.—For purposes of this section, the phrase "legally insane" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know

the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

1982, Dec. 15, P.L. 1262, No. 286, § 1, effective in 90 days.

■ At the outset, we note that sections 314 and 315 were not intended to alter the prior law of this Commonwealth relating to the defense of insanity. This intent is expressly articulated in subsection 314(d) and our Rules of Statutory Construction require that we accept that clearly stated intent of the General Assembly. *See*, 1 Pa.C.S. § 1921(b); *In the Matter of Glancey*, 518 Pa. 276, 285, 542 A.2d 1350, 1354 (1988); *In re Fox's Estate*, 494 Pa. 584, 431 A.2d 1008 (1981); *Hellertown Mfg. Co. v. Commonwealth*, 480 Pa. 358, 365, 390 A.2d 732, 735 (1978). Moreover, the parties do not question this conclusion and accept the fact that the traditional rules relating to the defense of insanity and its definition remain in place. Thus, the burden is upon the defendant to prove by a preponderance of the evidence that at the time of the commission of the offense, he was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act, or the alternative that he did not know that what he was doing was wrong. *Commonwealth v. Metzler*, 499 Pa. 122, 451 A.2d 1352 (1982); *Commonwealth v. Oblek*, 496 Pa. 519, 437 A.2d 1162 (1981); *Commonwealth v. Scarborough*, 491 Pa. 300, 421 A.2d 147 (1980); *Commonwealth v. Hicks*, 483 Pa. 305, 396 A.2d 1183 (1979); *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976); *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974); *Commonwealth v. Melton*, 406 Pa. 343, 178 A.2d 728 (1962), *cert. denied*, 371 U.S. 851, 83 S.Ct. 93, 9 L.Ed.2d 87; *Commonwealth v. Woodhouse*, 401 Pa. 242, 164 A.2d 98 (1960); *Commonwealth v. Neill*, 362 Pa. 507, 67 A.2d 276 (1949); *Commonwealth v. Mosler*, 4 Pa. 264 (1849).

Appellant argues that the burden should be upon the Commonwealth to prove mental illness by a preponderance of the evidence. Amicus Defenders Associations (Defend-

ers) [2] agree that the burden should be upon the Common-wealth but argue that the standard required is beyond a reasonable doubt. Appellee argues that the burden should be upon the defendant to prove mental illness beyond a reasonable doubt. Whereas another amicus, District Attor-ney of Philadelphia, although in agreement that the burden should be upon the defendant, views the quantum required to meet that burden as a preponderance of the evidence. Thus, in each instance, even those who agree as to the party upon whom the burden is placed are unable to agree upon the measure of proof required by that burden. It is there-fore evident that the language of the legislation is not clear and unequivocal on the questions under consideration.

The difficulty encountered by attempting to answer these questions by a literal reading of subsection 314(a) is demon-strated in the argument presented by the Defenders. They begin with a recognition of the rule of statutory construc-tion that punctuation and grammar of a statute are useful aids in interpreting statutes. 1 Pa.C.S. §§ 1903, 1923(b). They then proceed to focus upon the following portion of the subsection:

> ... if the trier of fact finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

It is argued that because the phrase "beyond a reasonable doubt" is set off by commas both before and after, this indicates that the phrase modifies the word "finds", which precedes it, and thus applies to each of the three items in the series of findings itemized after the word "finds" and the modifying phrase. The Defenders contend that, if the legislature intended that only the finding that the person is guilty need be established beyond a reasonable doubt, a comma would not have been placed after the word "doubt." We will accept for the sake of argument the grammatical

2. The Public Defenders Association of Pennsylvania and the Defender Association of Philadelphia have joined in acting as amicus curiae before the Court.

soundness of this contention. However, this reasoning would also force us to conclude that there is a burden to prove beyond a reasonable doubt that the offender was not legally insane at the time of the commission of the offense. Such a result is clearly in conflict with subsection 315(a) which expressly places upon the defense the burden to prove insanity by a preponderance.[3]

In entering upon this inquiry rather than limiting our focus to the grammatical structure of the provision,[4] we believe that it would prove more fruitful to first determine the nature of this new concept the legislature intended to create under section 314. If the new concept of guilty but mentally ill described in subsection 314(a) is in the nature of a distinct type of criminal offense or a basis for an enhancement of sentence, the burden would traditionally fall upon the Commonwealth, and the traditional burden would be proof beyond a reasonable doubt. In contrast, if the legislature intended to create a new defense in the area of mental illness or to establish a mitigating factor, the burden would obviously be upon the defense and the appropriate proof requirement would be by a preponderance of the evidence.

**3.** It is a basic tenet of our criminal jurisprudence that every man is presumed to possess mental faculties sufficient to be responsible for his crimes. *See Commonwealth v. Updegrove,* 413 Pa. 599, 198 A.2d 534 (1964); *Commonwealth v. Johnson,* 402 Pa. 479, 167 A.2d 511 (1961); *Commonwealth v. Carluccetti,* 369 Pa. 190, 85 A.2d 391 (1952). Thus, the burden of proving insanity, relieving the defendant of culpability for his act, has traditionally been upon the defendant. *See, e.g., Commonwealth v. Carluccetti, supra.* This rule was clouded by this Court's fragmented decision in *Commonwealth v. Vogel,* 440 Pa. 1, 268 A.2d 89 (1970), and was indeed modified in *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974), and *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974), which placed the burden of persuasion upon the Commonwealth. "When the question of sanity is at issue and the presumption of sanity has disappeared the evidence must be sufficient to support a finding of sanity beyond a reasonable doubt." *Demmitt,* 456 Pa. at 482, 321 A.2d at 631. This position has been repudiated by legislative enactment found in 18 Pa.C.S. § 315, *Commonwealth v. Ruth,* 309 Pa.Super. 458, 455 A.2d 700 (1983), decided following the enactment of this provision but before its effective date, notwithstanding.

**4.** Grammatical errors will not vitiate a statutory provision. *See* 1 Pa.C.S. § 1923(a).

After study of the provisions of section 314 and the related provisions prescribing the disposition of persons found guilty but mentally ill, 42 Pa.C.S. § 9727,[5] we are

5. Section 9727 of the Judicial Code provides:

§ 9727. Disposition of persons found guilty but mentally ill

(a) Imposition of sentence.—A defendant found guilty but mentally ill or whose plea of guilty but mentally ill is accepted under the provisions of 18 Pa.C.S. § 314 (relating to guilty but mentally ill) may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense. Before imposing sentence, the court shall hear testimony and make a finding on the issue of whether the defendant at the time of sentencing is severely mentally disabled and in need of treatment pursuant to the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the "Mental Health Procedures Act."

(B) Treatment.—

(1) An offender who is severely mentally disabled and in need of treatment at the time of sentencing shall, consistent with available resources, be provided such treatment as is psychiatrically or psychologically indicated for his mental illness. Treatment may be provided by the Bureau of Correction, by the county or by the Department of Public Welfare in accordance with the "Mental Health Procedures Act."

(2) The cost for treatment of offenders found guilty but mentally ill, committed to the custody of the Bureau of Correction and transferred to a mental health facility, shall be borne by the Commonwealth.

(c) Discharge report.—When a treating facility designated by either the Bureau of Correction or the Department of Public Welfare discharges such a defendant from treatment prior to the expiration of his maximum sentence, that treating facility shall transmit to the Pennsylvania Board of Probation and Parole, the correctional facility or county jail to which the offender is being returned and the sentencing judge a report on the condition of the offender, together with the reasons for its judgments which describes:

(1) The defendant's behavior.

(2) The course of treatment.

(3) The potential for recurrence of the behavior.

(4) The potential for danger to himself or the public.

(5) Recommendations for future treatment.

(d) Prerelease and parole conditions.—An offender who is discharged from treatment may be placed on prerelease or parole status under the same terms and laws applicable to any other offender. Psychological and psychiatric counseling and treatment may be required as a condition of such status. Failure to continue treatment, except by agreement of the supervising authority, shall be a basis for terminating prerelease status or instituting parole violation hearings.

(e) Parole Procedure.—The paroling authority may consider the offender for parole pursuant to other law or administrative rules. When the paroling authority considers the offender for parole, it

satisfied that the alternatives mentioned above were not intended by the legislature in creating this concept of guilty but mentally ill. Mental illness under our Crimes Code will not be permitted to eliminate the *mens rea* requirement for culpability for otherwise criminal conduct unless the M'Naghten test is met. Subsection 314(a) by its very terms accepts the fact that the offender is guilty of the offense charged, which necessarily implies that the mental illness did not preclude the *mens rea* required by the offense. It is equally apparent from section 9727 that a finding of mentally ill was also not intended to mitigate the punishment to be meted out for the commission of the criminal act. 42 Pa.C.S. § 9727. Equally as obvious is that it does not create a distinct offense nor does it provide an enhancement of an existing offense.

Section 9727 expressly provides that a defendant found guilty but mentally ill "may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense." The only distinction be-

shall consult with the treating facility at which the offender is being treated or from which he was discharged.

(f) Probation.—

(1) If an offender who is found guilty but mentally ill is placed on probation, the court may, upon recommendation of the district attorney or upon its own initiative, make treatment a condition of probation.

(2) Reports as specified by the trial judge shall be filed with the probation officer and the sentencing court. Failure to continue treatment, including the refusal to take such drugs as may be prescribed, except by agreement of the sentencing court, shall be a basis for the institution of probation violation hearings. The period of probation shall be the maximum permitted by law and shall not be reduced without receipt and consideration by the court of a mental health status report like that required in subsection (c).

(3) Treatment shall be provided by an agency approved by the Department of Public Welfare or, with the approval of the sentencing court and at individual expense, by private agencies, private physicians or other mental health personnel. A mental health status report, containing the information set forth in subsection (c), shall be filed with the probation officer and the sentencing court every three months during the period of probation. If a motion on a petition to discontinue probation is made by the defendant, the probation officer shall request a report as specified from the treating facility.

1982, Dec. 15, P.L. 1262, No. 286, § 2, effective in 90 days.

tween the convicted defendant and the convicted defendant determined to have been mentally ill at the time of the commission of the offense is that, in the case of the latter, the judge, before imposing sentence, must take testimony and make a finding as to whether the person *at the time of sentencing* is severely mentally disabled and in need of treatment. It is only when the convicted defendant is found to be mentally ill and in need of treatment at the time of sentencing, consistent with available resources, that provision will be made to provide psychiatric or psychological treatment. Thus, the only effect of a verdict of guilty but mentally ill is to trigger an inquiry at the time of sentencing to determine the defendant's mental status at the time of the sentencing phase. It is therefore clear that the additional finding of mentally ill at the time of the offense has no impact upon the adjudicative process.[6] This new concept

**6.** Amicus Defenders have contended that the verdict of guilty but mentally ill, as an intermediate position between a finding of guilt and an acquittal by reason of insanity, presents a compromise for jurors who might believe the defendant insane but do not wish to absolve him of responsibility for his act. For this reason, Defenders argue that a burden upon the Commonwealth to prove mental illness beyond a reasonable doubt is constitutionally mandated.

The premise underlying Defenders' argument is that a jury will ignore the instruction of insanity given by the trial court in rendering a verdict of guilty but mentally ill, and many defendants will be so convicted regardless of their meeting the M'Naghten standard. Defenders, however, have cited no empirical authority to indicate that jurors have in fact been dissuaded from entering an insanity verdict where proper. Indeed, the only authority we have located indicates that researchers in Michigan, following a four-year study of that state's statute, were unable to discern any effect the new verdict had upon the success of insanity defenses. *See* McGraw, *The Guilty but Mentally Ill Verdict: Current State of the Knowledge,* 30 Vill.L.Rev. 117, 170–178 (1985); Smith & Hall, *Evaluating Michigan's Guilty but Mentally Ill Verdict: An Empirical Study,* 16 Mich.J.L.Ref. 77, 100–101 (1982).

The new verdict should have no impact upon defendants who truly meet the M'Naghten Rule. Juries instructed upon mental illness must also be instructed upon legal insanity, and those jurors must then review the evidence presented in light of both standards. If in fact fewer defendants are adjudicated insane than prior to the enactment of section 314, this could very well be that juries in the past, given only a choice between complete culpability or complete absolution, opted for the more humane alternative even when the facts did not justify an insanity acquittal. The guilty but mentally ill verdict has

is a penological concern and is not an element of the substantive crime. Thus there is no need for the assignment of a burden of proof either upon the Commonwealth or the defense.

In this perspective the intent of 314(a) is clear. A burden is assigned to put the onus upon one of the parties to a lawsuit to come forward with evidence on the question in issue. Subsection 314(a) indicates that the issue of the mental illness at the time of the conviction of the offense is triggered when the defense of insanity is raised. The evidence presented in support of the insanity plea and the evidence offered by the Commonwealth in response provides the factual matrix for also determining the question as to whether, even though not insane under M'Naghten, the defendant was mentally ill at the time of the commission of the offense. Thus, there is no need for a further assignment of a burden of proof for that purpose. This is consistent with the language of the subsection which only refers to the trier of fact assessing the evidence without reference to either party producing the evidence.[7]

▮ Since we have concluded that a finding of mentally ill at the time of the commission of the offense is not an element of the substantive crime or crimes charged, there is no basis for requiring proof beyond a reasonable doubt. It is sufficient for the finder of fact to determine from the evidence produced as to the mental state of the defendant at the time of the offense whether the fact of his mental illness preponderates. We therefore hold that neither party is required to prove that the defendant was mentally ill at the time of the commission of the offense. From the

been enacted to fill this gap in our system of criminal justice. Its abuse by those responsible for its execution should not be presumed.

For cases in other jurisdictions rejecting the compromise verdict argument, see United States ex rel. Weismiller v. Lane, 915 F.2d 1106 (7th Cir.1987); People v. Ramsey, 422 Mich. 500, 375 N.W.2d 297 (1985); People v. Smith, 124 Ill.App.3d 805, 80 Ill.Dec. 310, 465 N.W.2d 101 (1st Dist.1984).

7. This approach also avoids the possibility of either party being required to assert conflicting positions.

testimony generated from the defense of insanity, the trier of fact must determine whether the evidence supporting a finding of mental illness preponderates. If such is the case, a verdict of guilty but mentally ill is appropriately returned.

Accordingly, the adjudication of guilt is hereby affirmed; the judgment of sentence imposed is vacated and the cause is remanded to the trial court for reassessment of the evidence presented on the question of appellant's mental illness at the time of the commission of these offenses. Jurisdiction is relinquished.

McDERMOTT, J., concurs in the result.