718 A.2d 270

**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Paul GUMBER, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1997.

Decided Aug. 25, 1998.

---

Christian A. Trabold, for the Com.

Joseph P. Burt, Erie, for Paul Gumber.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### ORDER

PER CURIAM:

The Court being evenly divided, the Order of the Superior Court is affirmed.

NIGRO, J., files a concurring statement, joined by CAPPY, J., who also joins the per curiam affirmance.

CASTILLE, J., files a dissenting statement in which FLAHERTY, C.J., and NEWMAN, J., join.

NIGRO, Justice, concurring.

While I join the *per curiam* order affirming the Superior Court's decision to vacate Appellee's judgment of sentence and remand for a new trial, I write separately to respond to Mr. Justice Castille's dissenting statement.

As a general proposition, I agree with Justice Castille that a trial judge, sitting without a jury, is not required to give specific findings of fact and conclusions of law. Thus, I agree that a trial judge, sitting as fact finder, is not required to make a specific finding that a defendant has sustained or failed to sustain his burden of proving an insanity defense when that judge determines that the evidence supports a finding of guilty but mentally ill. However, the problem in this case, as made clear by the Superior Court, is that the evidence is clearly contrary to the trial judge's finding that Appellee was guilty but mentally ill, and thus by deduction,

that Appellee had failed to meet his burden of proving that he was legally insane.[1]

As the Superior Court explains in careful detail, the court-appointed psychiatrist, Dr. Ziga, testified that Appellee was insane, N.T. at 33, that the M'Naghten rule applied to Appellee, N.T. at 58, that Appellee was incapable of knowing what he was doing, N.T. at 33, and that Appellee was incapable of knowing that what he was doing was wrong, N.T. at 33. Dr. Ziga repetitively indicated that Appellee's mental illness prevented him from knowing the nature and quality of the act and further prevented him from knowing that what he was doing was wrong, a clear fit with the definition of legal insanity. Despite this testimony, which was not rebutted, the trial court found Appellee guilty but mentally ill. *See Commonwealth v. Sohmer*, 519 Pa. 200, 206, 546 A.2d 601, 604 (1988) (defendant raising insanity defense has burden of proving by preponderance of evidence that at the time of the commission of the act, he was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or, if he did know it, that he did not know what he was doing was wrong). The Superior Court properly determined that Appellee met his burden of proving insanity by a preponderance of the evidence, and thus, that the trial court's finding that Appellee was guilty but mentally ill was contrary to the evidence.

CAPPY, J., joins in this concurring statement, and also joins the per curiam affirmance.

1. Here, the Superior Court noted that the trial court failed to make a specific finding as to whether or not Appellee met his burden of proving insanity in his conclusion that Appellee was guilty but mentally ill. However, the Superior Court went on to hold that to the extent that the court did find that Appellee failed to prove insanity, by concluding that Appellee was guilty but mentally ill, such a finding was contrary to the evidence. The Superior Court also noted that the fact finder may consider the alternative verdict of guilty but mentally ill only when the defendant fails to carry his burden with respect to the insanity defense. *See Commonwealth v. Young*, 524 Pa. 373, 392 n. 3, 572 A.2d 1217, 1227 n. 3 (1990); Pennsylvania Suggested Standard Criminal Jury instructions 5.01 A(6) (guilty but mentally ill becomes a possible verdict only when a defendant offers but fails to prove a legal insanity defense).

CASTILLE, Justice, dissenting.

The issue in the matter before this Court is whether the finder of fact, be it judge or jury, is required to make a specific finding that a defendant has either sustained or failed to sustain his burden of proving an insanity defense where the fact-finder has determined that the evidence supports a finding of guilty but mentally ill. The majority's decision to enter a *per curiam* order affirming the Superior Court's decision to vacate appellee's judgment of sentence and remand the matter for a new trial, affirms the Superior Court's holding that the trial court, when sitting as the finder of fact, is required to make a specific finding as to whether the appellee failed to sustain his burden of proving his insanity defense. However, Pennsylvania case law does not require the finder of fact to make a specific finding regarding whether the defendant has sustained his burden of proving his insanity defense where the evidence supports a finding of guilty but mentally ill. Hence, I must dissent to the majority's decision not to rule upon the merits of this case.

The underlying facts giving rise to this appeal are that the victim, Melissa P. went to a party with her boyfriend Mark Justice at Scott Ryan's residence. There were several other individuals at the party, including appellee. The victim, her boyfriend and appellee all spent the night at their friend's residence. The victim fell asleep on the couch face-to-face with Mark Justice, with his arms around her. At the time, the victim was wearing a dress and a pair of underpants and both she and Justice were covered with a blanket. The victim testified that she was awakened sometime later that evening by "some finger inside me, my vagina, I brushed them away, I didn't want to be totally rude, I thought it was Mark. I was asleep, I didn't want to be bothered by it. He kept doing it, I kept pushing his hand away, and I felt a tongue inside me and licking my fingers and holding onto my hand, and I opened my eyes and realized that Mark's face was next to me and his arms were around me, and I turned around and appellee's face was under our blanket...." N.T. 22A. The victim testified that she jumped up and ran out of the apartment. When she

returned she saw appellee crouched on he floor rocking back and forth. She went over to attempt to speak to appellee, but she became overcome with anger and began striking appellee. Appellee responded: "Leave her be. I deserve it. Let her go. Let her do it."

The victim had been acquainted with appellee for some time before the evening in question and she indicated that she thought he had been acting strangely that evening. Ryan was in the apartment when the incident took place and heard the victim's screams. Shortly thereafter, Ryan spoke with appellee and appellee claimed that he was seeing, hearing and tasting the color green and that the he was hearing a lot of static. Appellee explained what he meant by hearing the static sound by picking up some tin foil and crinkling it. Appellee further told Ryan that on the way to his apartment that evening, he saw a male in a dress and another person throwing up blood on a dumpster.

At trial, appellee's sole witness was court-appointed psychiatrist, Alex Ziga, M.D. Dr. Ziga testified that he concluded that appellee suffered from Schizoaffective Disorder at the time he committed the offense. Dr. Ziga further testified that at the time appellee committed the offense, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

Following a bench trial, the trial court found appellee guilty but mentally ill and sentenced appellee to a term of two and half (2½) to five (5) years imprisonment for involuntary deviate sexual intercourse and a consecutive term of five (5) years probation for aggravated indecent assault. On direct appeal, the Superior Court, in an order and memorandum opinion, vacated appellee's judgment of sentence and remanded this matter for a new trial, holding that the trial court failed to make a specific finding as to whether the appellee sustained his burden of proving his insanity defense.

Under Pennsylvania law, a person may be found guilty but mentally ill "if the trier of fact finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill

at the time of the commission of the offense and was not legally insane at the time of the commission of the offense." 18 Pa.C.S. § 314(a). The burden is on the defendant to prove, by a preponderance of the evidence, that at the time of the offense, he labored under a defect of reason or disease of the mind, such that he did not know the nature and quality of the act or alternatively, that he did not know that what he was doing was wrong. *Commonwealth v. Sohmer*, 519 Pa. 200, 206, 546 A.2d 601, 604 (1988). Here, the trial judge, sitting as the finder of fact, noted that Dr. Ziga did not conclude that defendant was legally insane at the commission of the offenses, but that he did find sufficient evidence to conclude that defendant did suffer from Schizoaffective Disorder. The trial court found, therefore, that based upon Dr. Ziga's expert medical testimony, as well as the victim's and Scott Ryan's testimony, that appellee had proven by a preponderance of the evidence that he suffered from a mental disease which substantially prohibited him from appreciating the wrongfulness of his conduct or to conform his conduct to the requirements of the law. Accordingly, the trial court concluded that appellant was guilty but mentally ill. By finding appellee guilty but mentally ill, the trial court implicitly found that appellee failed to meet his burden of proving an insanity defense. Such an implicit rejection of appellee's defense was clearly valid given the evidence presented at trial and found to be credible by the trial judge sitting as finder of fact. Because the finder of fact rendered a verdict consistent with the evidence presented at trial, that appellee was guilty but mentally ill, there was no need for the finder of fact to opine as to any other possible verdict and, therefore, this was not a proper basis for the Superior Court's reversal and remand for a new trial.

Accordingly, I disagree with the majority's *per curiam* affirmance of this matter.

FLAHERTY, C.J., and NEWMAN, J., join this dissenting statement.