J-A23016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LEON RAYMOND WALLS | |
| Appellant | No. 1488 WDA 2015 |

Appeal from the Judgment of Sentence Entered August 13, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0007810-2014

BEFORE:  LAZARUS, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 4, 2017**

Appellant, Leon Raymond Walls, appeals from the August 13, 2015 judgment of sentence imposing ten to twenty years of incarceration after a jury found Appellant guilty but mentally ill of attempted homicide, two counts of aggravated assault, unlawful restraint, terroristic threats, possession of an instrument of crime, and recklessly endangering another person.[1]  We affirm.

This case involves stabbings that occurred on March 25, 2013 on Highland Avenue and in a Target department store in the East Liberty neighborhood of Pittsburgh.  The record reflects that Jobe Wright, Mike

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S.A. §§ 901, 2501, 2702, 2902, 2706, 907, 2705, respectively.

Turner, Roland Smith and Tyrique Walker were standing on Highland Avenue when Appellant passed by and stabbed Wright. N.T. Trial, 6/2-4/15, at 68-69, 88-89, 104-05. Appellant yelled, "he robbed me," as he fled down the sidewalk toward the nearby Target. *Id.* Turner and Wright pursued Appellant by car after the stabbing, and Smith and Walker pursued him on foot. *Id.* at 70, 90, 106. There was no prior relationship between Appellant and Wright, Smith, Turner, or Walker. *Id.* at 71, 83-84.

Smith found Appellant in the bathroom of Target changing his clothes. *Id.* at 107. Smith confronted Appellant about the stabbing, and Appellant said to Smith, "You trying to rob me." *Id.* at 108. Smith then left the bathroom and went outside the store to await the arrival of the police. *Id.* at 109-110. Meanwhile, Appellant encountered Turner and Wright in the store. *Id.* at 70. Appellant, still brandishing a knife, threatened to kill Turner. *Id.* at 72-73. Appellant hit Turner with a shopping cart and began running through the store. *Id.* at 75-76. Turner handed the bat to Wright, who pursued Appellant through the store. *Id.* at 93. Wright and Appellant exchanged words, with Wright confronting Appellant about the stabbing and Appellant yelling, "I'm not going to jail." *Id.* at 94.

Sharon Meadows, mother of victim Allison Meadows, heard Appellant yelling, "You stole my wallet." *Id.* at 122, 139. Appellant made his way to the cash registers, where he took a hold of 16-year-old Allison, who was

waiting in line with her mother and Chelsea Stokes.[2] *Id.* at 124-26, 132. Appellant yelled, "Y'all think I'm playing," and "They're robbing me." *Id.* at 76, 95-96. Stokes testified that Appellant was also shouting, "Call the cops" or "Call the police." *Id.* at 140, 144. Appellant held Allison by the neck and put the knife to her back and yelled, "I'm gonna stab her. I'm gonna stab her." *Id.* at 126.

Turner testified that Appellant stabbed Meadows twice and attempted to stab her a third time but another bystander prevented him. *Id.* at 76, 79. Wright testified that "some young kid" jumped over the counter when Appellant stabbed Meadows. *Id.* at 97. Sharon Meadows and Chelsey Stokes testified that the stabbing occurred just after the bystander intervened. *Id.* at 128, 143. Turner claimed he was ten feet away from Appellant and Meadows when the stabbings occurred. *Id.* at 77. After the bystander intervened, Turner attempted to wrestle Appellant to the ground. *Id.* at 80. Smith, who had returned to the store, and Wright also "rushed" Appellant. *Id.* at 112. Unable to wrestle Appellant to the ground, Turner used a humidifier to hit Appellant in the head. *Id.* at 80. Wright testified that he hit Appellant with the bat several times. *Id.* at 98. Smith suffered three cut fingers and lost the use of two of them. *Id.* at 115, 118.

---

[2] Stokes is the mother of Sharon's grandson and Allison's nephew. Sharon and Allison were in town to visit Stokes' five-year-old son, who underwent transplant surgery in 2012. *Id.* at 132, 137-38.

City of Pittsburgh Police Officer Leroy Schrock responded to the scene, observed the altercation among Appellant and the others, and ordered everybody to stop. *Id.* at 147-48. Target security identified Appellant as the person with the knife, and Officer Schrock ordered Appellant to roll onto his belly. *Id.* at 147-48, 159. Appellant had a bewildered look in his eyes and did not comply. *Id.* at 148, 158. Appellant did not make any aggressive moves toward Officer Schrock. *Id.* at 158-59. When Appellant did not comply with Office Schrock's order to roll over, Officer Schrock used pepper spray on Appellant and then tried to force Appellant onto his belly. *Id.* at 148-49. Back up arrived and used a Taser on Appellant, after which Officer Schrock was able to handcuff him. *Id.* at 149.

There is no evidence that Wright robbed Appellant before Appellant stabbed him, nor is there any evidence that Wright and his companions were attempting to rob Appellant when they pursued Appellant into Target. The primary issue before us is whether Appellant, when he committed these crimes, was legally insane and therefore incapable of forming criminal intent.

The Commonwealth arrested Appellant and charged him with three counts of attempted homicide, five counts of aggravated assault, one count each of unlawful restraint and false imprisonment, two counts of terroristic threats, one count of possession of an instrument of crime, four counts of

recklessly endangering another person, and one count each of simple assault and resisting arrest.[3]

On June 4, 2014, a jury found Appellant guilty but mentally ill of the following offenses: attempted homicide of Meadows, aggravated assault of Wright and Meadows, unlawful restraint and false imprisonment of Meadows, terroristic threats toward Meadows and Turner, possession of an instrument of crime, and recklessly endangering another person (Meadows). The jury found Appellant not guilty by reason of insanity of the attempted homicide of Wright and recklessly endangering another person (Wright).[4]

The jury found Appellant not guilty of attempted homicide of Walker, aggravated assault of Walker, Turner, and Smith, recklessly endangering another person (Walker and Smith), and resisting arrest.

On August 13, 2015, the trial court imposed an aggregate 10 to 20 years of incarceration, the mandatory minimum. Appellant filed timely post-sentence motions one day later. The trial court denied the post-sentence motions on August 28, 2015. This timely appeal followed.

---

[3] 18 Pa.C.S.A. §§ 901, 2501, 2702, 902, 903, 2706, 907, 2705, 2701, and 5104, respectively.

[4] We observe that "[i]nconsistent verdicts are proper so long as the evidence is sufficient to support the convictions that the jury has returned." **Commonwealth v. Trill**, 543 A.2d 1106, 1111 (Pa. Super. 1988) (holding that it was permissible for a jury to find the defendant guilty of one offense and guilty but mentally ill of another, where the offenses were committed on the same day), *appeal denied*, 562 A.2d 826 (Pa. 1989). Appellant does not challenge the consistency of the verdicts.

Appellant presents three questions for our review:

I.    Did the Commonwealth present insufficient evidence to convict [Appellant] on any count, as it failed to prove he possessed the required intent to commit any offense?

II.   Are the verdicts of guilty but mentally ill against the weight of the evidence, as the conclusion of the Commonwealth's expert was based on evidence not in the record, namely the disproven accusation that [Appellant] resisted arrest?

III.  Is the statute governing the sentencing of those found guilty but mentally ill, 42 Pa.C.S.A. § 9727, unconstitutional, statutorily sanctioned cruel and unusual punishment and a violation of due process?

Appellant's Brief at 7.

We consider these arguments in turn.  The following standard governs our review of Appellant's challenge to the sufficiency of the evidence:

> When evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt.  This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed.  We do not weigh the evidence or make credibility determinations.  Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

*Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010), *appeal denied*, 29 A.3d 796 (Pa. 2011).

Appellant argues the evidence of his guilt is insufficient because he was legally insane.  As noted above, the jury found Appellant guilty but mentally ill on numerous counts.  Section 314 of the Crimes Code governs

the insanity defense, and distinguishes legal insanity from guilty but mentally ill:

> **(a) General rule.--**A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.
>
> **(b) Plea of guilty but mentally ill.--**A person who waives his right to trial may plead guilty but mentally ill.  No plea of guilty but mentally ill may be accepted by the trial judge until he has examined all reports prepared pursuant to the Rules of Criminal Procedure, has held a hearing on the sole issue of the defendant's mental illness at which either party may present evidence and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered.  If the trial judge refuses to accept a plea of guilty but mentally ill, the defendant shall be permitted to withdraw his plea.  A defendant whose plea is not accepted by the court shall be entitled to a jury trial, except that if a defendant subsequently waives his right to a jury trial, the judge who presided at the hearing on mental illness shall not preside at the trial.
>
> **(c) Definitions.--**For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty but mentally ill):
>
>> (1) "*Mentally ill.*"  One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.
>>
>> (2) "*Legal insanity.*"  At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.
>
> **(d) Common law M'Naghten's Rule preserved.--**Nothing in this section shall be deemed to repeal or otherwise abrogate the

common law defense of insanity (M'Naghten's Rule) in effect in this Commonwealth on the effective date of this section.

18 Pa.C.S.A. § 314.

A defendant pleading an insanity defense bears the burden of proving by a preponderance of the evidence that he did not know either the nature and quality of the act he committed, or that what he was doing was wrong. *Commonwealth v. Sohmer*, 546 A.2d 601, 604 (Pa. 1988); 18 Pa.C.S.A. § 315(a).

> Mental illness under our Crimes Code will not be permitted to eliminate the *mens rea* requirement for culpability for otherwise criminal conduct unless the M'Naghten test is met. Subsection 314(a) by its very terms accepts the fact that the offender is guilty of the offense charged, which necessarily implies that the mental illness did not preclude the *mens rea* required by the offense. It is equally apparent from section 9727 that a finding of mentally ill was also not intended to mitigate the punishment to be meted out for the commission of the criminal act. 42 Pa.C.S. § 9727.[5] Equally as obvious is

_____

[5] Section 9727 provides:

> **(a) Imposition of sentence.--**A defendant found guilty but mentally ill or whose plea of guilty but mentally ill is accepted under the provisions of 18 Pa.C.S. § 314 (relating to guilty but mentally ill) may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense. Before imposing sentence, the court shall hear testimony and make a finding on the issue of whether the defendant at the time of sentencing is severely mentally disabled and in need of treatment pursuant to the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the "Mental Health Procedures Act."

> **(b)** Treatment**.--**

*(Footnote Continued Next Page)*

that it does not create a distinct offense nor does it provide an enhancement of an existing offense.

***Id.*** at 606.

Appellant's expert, Dr. Abhishek Jain, a forensic psychiatrist, interviewed Appellant twice and reviewed relevant records. N.T. Trial, 6/2-4/15, at 178. Dr. Jain concluded Appellant was schizophrenic with borderline intellectual functioning. ***Id.*** at 179, 181. Appellant suffered from delusions of paranoia, which are a "fixed false belief in things that are not actually happening in reality." ***Id.*** Appellant believed the sun and moon were not real, and he would "try to make sense of various numbers and predict if the world was real or not." ***Id.*** at 179, 201. Appellant also suffered from hallucinations, including hearing a voice say, "Hate! Hate! Hate!" ***Id.*** at 180, 201. On the day in question, Appellant heard a voice

_(Footnote Continued)_ ―――――――――――

(1) An offender who is severely mentally disabled and in need of treatment at the time of sentencing shall, consistent with available resources, be provided such treatment as is psychiatrically or psychologically indicated for his mental illness. Treatment may be provided by the Bureau of Correction, by the county or by the Department of Public Welfare in accordance with the "Mental Health Procedures Act."

(2) The cost for treatment of offenders found guilty but mentally ill, committed to the custody of the Bureau of Correction and transferred to a mental health facility, shall be borne by the Commonwealth.

42 Pa.C.S.A. § 9727(a), (b).

say, "Hate! Hate! Hate! They are going to kill you." *Id.* at 199. Dr. Jain did not believe Appellant was feigning his symptoms. *Id.* at 184-88.

Appellant told Dr. Jain he did not remember the assault of Wright and Allison Meadows. *Id.* at 195, 198. He remembered being in a dollar store buying bug repellant before the assaults, and then he remembered waking up in a pool of blood at Target. *Id.* at 195. On cross-examination, defense counsel established that a behavior clinic report prepared shortly after Appellant's arrest indicated that Appellant affirmed that the stabbings occurred. *Id.* at 211. Dr. Jain testified that it was difficult to determine whether Appellant actually remembered the events in question or if he was responding to what he had been told. *Id.*

Dr. Jain noted that, during the incident, Appellant asked people to call police and claimed he was being robbed. *Id.* at 202-03, 206-07. Appellant had no obvious motive to stab Wright, as the two did not know each other. *Id.* at 203. Dr. Jain described the stabbing of Allison Meadows as follows:

> But overall he was acting in a self-protective manner, and this, again in my opinion, in the belief that he was being harmed. Then when he grabbed Ms. Allison Meadows, again he initially grabbed her as a shield. Again to me this was a demonstration of him acting in a self-protective manner while he is very paranoid, very delusional, very fearful. So he grabs her as a shield in a self-protective manner and then only stabs her, from my understanding, after he was grabbed from behind. So he is in a highly agitated state. Then he gets grabbed from behind and then impulsively, almost as a reaction, sudden reaction, to being grabbed, then he stabs Ms. Meadows twice.

- 10 -

*Id.* at 205. Dr. Jain opined that Appellant "was most likely acting in a manner that he did not think was wrong." *Id.* at 208. Rather, Appellant believed he was defending himself. *Id.* Dr. Jain opined that Appellant, in light of his severe illness, did not know what he was doing was wrong. *Id.* at 209, 218-19.

Dr. Bruce Wright, a psychiatrist, testified for the Commonwealth. Dr. Wright interviewed Appellant once and reviewed relevant records. *Id.* at 257-58. Appellant's statements to Dr. Wright were consistent with the statements he gave to Dr. Jain. *Id.* at 258. Specifically, Appellant claimed he went to a dollar store to buy bug spray and did not recall anything until after stabbing Allison Meadows at Target. *Id.* Appellant told Dr. Wright he obtained the knife because people in his hallucinations kept telling him he would be attacked. *Id.* at 259, 265. Dr. Wright diagnosed Appellant with schizophrenia. *Id.* at 260. On whether Appellant knew his actions were wrong, Dr. Wright testified:

> I was not—I am not able to say with a reasonable degree of certainty that [Appellant] knew his actions were wrong. It is my opinion that he lacked substantial capacity to understand the wrongfulness of his actions and to conform his behavior to the requirements of the law. So lacking substantial capacity is very different than knowing what you are doing is wrong. Knowing is absolute. You either know or you don't know what you are doing. It is my opinion because of the psychiatric illness he lacked substantial capacity to know what he was doing was wrong.

*Id.* at 261. Dr. Wright opined that Appellant's request for someone to call the police was not consistent with knowledge of wrongdoing. *Id.* at 262.

Appellant's statement, "I'm not going to jail," on the other hand, indicated some knowledge of wrongdoing. *Id.* That statement, combined with Appellant's resistance of arrest were, according to Dr. Wright, "two very key points that illustrate a part of him knew what he was doing was wrong." *Id.* at 263. Dr. Wright declined to speculate whether his testimony would have been the same if Appellant had not resisted arrest. *Id.* at 267-68.

In summary, Dr. Jain testified that Appellant did not know what he was doing was wrong, thus rendering him legally insane under § 314(c)(2). Dr. Wright testified that Appellant lacked the substantial capacity to understand the wrongfulness of his conduct, thus rendering him mentally ill under § 314(c)(1), but capable of forming criminal intent. Appellant acknowledges Dr. Wright's testimony, but argues that "[i]n the interests of criminal justice, this Honorable Court must consider 'lacking substantial capacity' to do something and 'not having the capacity' to do that same thing, as one in the same. This is a linguistic distinction without a practical difference." Appellant's Brief at 31.

Appellant's argument fails because it contradicts established precedent. Put simply, a guilty but mentally ill conviction "does not negate [an appellant's] intent to commit a criminal act." ***Commonwealth v. Rabold***, 920 A.2d 857, 859 (Pa. Super. 2007) (quoting ***Commonwealth v. Santiago***, 855 A.2d 682, 701 (Pa. 1988)), *affirmed*, 951 A.2d 329 (Pa. 2008). In ***Commonwealth v. Trill***, 543 A.2d 1106 (Pa. Super. 1988),

*appeal denied*, 562 A.2d 826 (Pa. 1989), this Court analyzed the distinction between legally insane and mentally ill:

> Mental illness and insanity are qualitatively separate concepts. The two definitions do, however overlap. All individuals who are legally insane are also mentally ill. But the converse of the statement, that all persons who are mentally ill are also insane, is false. The difference is not quantitative. In other words, an extremely mentally ill individual may not be legally insane. A high degree of mental illness does not destroy *mens rea*. The difference is qualitative. Insanity definitions are attempts to isolate the element of *mens rea* that may be present in some illnesses but not in others. Because the two concepts involve qualitatively separate elements, they are not likely to cause undue confusion to juries.

*Id.* at 1128 (quoting Comment, *Guilty But Mentally Ill: An Historical and Constitutional Analysis*, 53 Urban L.J. 471, 478 (1978)). More succinctly, "[t]he mentally ill defendant in a murder case may exhibit only a limited understanding that killing is generally agreed to be wrong; the legally insane person has no idea whatsoever that killing is considered to be wrong." *Id.* at 1131 (Beck, J. concurring).

Furthermore, the *Trill* Court noted that it is within the jury's province to determine the credibility and weight of conflicting psychiatric testimony. *Id.* at 1112; *see also*, *Rabold*, 920 A.2d at 860. Given the plain language of § 314(c)(1), the case law interpreting that section, and Dr. Wright's testimony, we conclude that the record contains sufficient evidence from which the jury could reject Appellant's insanity defense and find him guilty but mentally ill.

Next, Appellant argues that the guilty but mentally ill verdicts are against the weight of the evidence because Dr. Wright based his opinions on his erroneous belief that Appellant resisted arrest.

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:
>
> > The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted; emphasis in original).

As explained above, Appellant did not comply when Officer Schrock ordered him to roll onto his belly. Officer Schrock used pepper spray on

Appellant and another officer used a Taser before Officer Schrock was able to handcuff Appellant. Nonetheless, Officer Schrock testified that Appellant did not physically resist police. The Commonwealth charged Appellant with resisting arrest, but the jury found him not guilty.

Dr. Wright opined that Appellant had at least some capacity to appreciate the wrongfulness of his conduct because he stated "I'm not going to jail" and because he resisted arrest. N.T. Trial, 6/2-4/15, at 262. Appellant argues that his convictions of guilty but mentally ill, based largely on Dr. Wright's expert testimony, are against the weight of the evidence because Dr. Wright incorrectly believed Appellant resisted arrest.

We reject Appellant's argument for two reasons. First, Dr. Wright did not testify that Appellant's resistance of arrest was a necessary condition for his opinion. When defense counsel pressed this point on cross examination, Dr. Wright declined to testify that his conclusion would change if Appellant had not resisted arrest. Dr. Wright's other key point—that Appellant said, "I'm not going to jail," did not depend on whether Appellant resisted arrest. Second, the record contains evidence that Appellant failed to comply with Officer Schrock's orders, and that pepper spray and a Taser were necessary before Officer Schrock could handcuff Appellant. Even though the jury found Appellant not guilty of resisting arrest, Dr. Wright could reasonably rely on Appellant's noncompliance with a police order in support of his opinion that Appellant had at least some capacity to appreciate the wrongfulness of his

actions. We cannot conclude that the trial court abused its discretion in denying a new trial on this basis.

Appellant's final argument is that § 9727 is unconstitutional because it permits cruel and unusual punishment. Appellant acknowledges that this Court in **Commonwealth v. Yasipour**, 957 A.2d 734 (Pa. Super. 2008) held that § 9727 does not violate the state and federal constitutional prohibitions of cruel and unusual punishment. Appellant invites us to reconsider **Yasipour** because § 9727(b)(1) provides that a severely mentally disabled defendant shall be provided treatment "consistent with available resources," and because no sufficient resources are available in this case. Appellant's Brief at 44 (citing 42 Pa.C.S.A. § 9727(b)(1)). At the sentencing hearing, the trial court stated:

> I also want to state on the record that [defense counsel, the prosecutor] and myself have all spent a lot of time in the last week looking for and hoping to find an appropriate mental health facility where [Appellant] can be treated.

> It is my strong belief that [Appellant] is suffering from a serious mental illness, was at the day of the crime and still is. We have run up against a wall. If sent to Torrance, it would be, it is a very short-term stay. Although I am going to recommend that he be placed in a mental health facility, or in a facility that is a correctional facility with mental health sections, or pods, or whatever they call them.

N.T. Sentencing, 8/13/15, at 3. After Appellant spoke on his own behalf, the trial court responded:

> I understand and I believe you. I believe you were mentally ill on that date that this occurred. And I think you are still mentally ill.

Unfortunately, it's very difficult for me to find someplace appropriate for you to go. The budgeting, and I know this isn't your fault, but they have just taken away so many resources, and what happens is that people that are mentally ill, since they have nowhere else to go, end up in jail. I'm sorry for your situation.

And I don't think you meant to do it. I believe that.

*Id.* at 4-5.

We are sympathetic to Appellant's plight, but we are bound by the precedential opinions of our Supreme Court and prior panels of this Court.[6] As Appellant acknowledges, the *Yasipour* Court concluded that § 9727 does not violate the prohibition on cruel and unusual punishment found in the Eighth Amendment of the United States Constitution and Article 1, § 13 of the Pennsylvania Constitution. Furthermore, applicable statutory and case law makes clear that a finding of guilty but mentally ill does not negate a defendant's intent, nor does it entitle the defendant to receive a different sentence than any other person convicted of the same offense. 42 Pa.C.S.A. § 9727(a); *Sohmer*, 546 A.2d at 604; *Santiago*, 855 A.2d at 701; *Rabold*, 920 A.2d at 859. Any change to the existing law must come from our Supreme Court and/or the General Assembly.

Finally, Appellant argues that § 9727 violates due process because it provides no means by which an offender can challenge the sufficiency of

---

[6] Furthermore, the power to create treatment resources and appropriate the necessary funding rests with our General Assembly.

available treatment resources prior to being stripped of his liberty. Appellant's Brief at 51. Appellant raised this argument for the first time in his Pa.R.A.P. 1925(b) statement. Thus, he has waived it. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). In any event, this court has noted that after the trial court finds an offender in need of treatment and commits him to the Bureau of Corrections, as the trial court did here, it becomes the Bureau of Corrections' responsibility to formulate an adequate treatment plan. ***Commonwealth v. Sematis***, 555 A.2d 1347,1349-50 (Pa. Super. 1989). The adequacy of the Bureau of Corrections' treatment plan is not properly before us on review of the judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger joins this memorandum.

Judge Lazarus files a concurring statement in which Judge Strassburger joins.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/4/2017